## Richmond

EDWARD J. RIORDAN, ET AL. v. WILLIAM F. HALE, ET AL.

March 10, 1975.

Record No. 740528.

Present, All the Justices.

*James J. Conroy, III*, for appellants.

No brief filed on behalf of appellees.

Cochran, J., delivered the opinion of the court.

Edward J. Riordan and James O. Day, owners of lots in Westwood Park Subdivision, in Fairfax County, filed their bill of complaint against William F. Hale and Frances L. Hale, his wife, and William H. Finein and Irene L. Finein, his wife, lot owners in the same subdivision, alleging that the Hales and Fineins had constructed fences on their respective properties within 25 feet of street lines, in violation of restrictive covenants applicable to all lots in the subdivision. Complainants asked that the

respondents be ordered to relocate their fences in compliance with the restrictive covenants. After considering the evidence, including the testimony of witnesses for the complainants heard *ore tenus*, the chancellor ruled that respondents' breach of the covenants had been waived, and sustained respondents' motion to strike the evidence. By order entered February 5, 1974, from which complainants have appealed, the chancellor dismissed the bill of complaint, with prejudice.

The restrictive covenants, duly recorded in the Clerk's Office of the Circuit Court of Fairfax County and incorporated by reference into all deeds conveying title to lots in the subdivision, provide in pertinent part as follows:

"2) No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the architectural control committee as to quality of workmanship and materials, harmony of external design with existing structures and as to location with respect to topography and finish grade elevation. No fence or wall shall be erected, placed or altered on any lot nearer to any street than the minimum building setback line unless similarly approved. Approval shall be as provided in Paragraph 9 hereof.

\* \* \*

"4) No building shall be located on any lot nearer to the front lot line or nearer to the side street line than the minimum building setback lines shown on the recorded plat. In any event no building shall be located on any lot nearer than 25 feet to the front lot line, or nearer than 25 feet to any side street line. No building shall be located nearer than 10 feet to an interior lot line, except that no side yard shall be required for a garage or other permitted accessory building located 30 feet or more from the minimum building setback line. No dwelling shall be located on any interior lot nearer than 20 feet to the rear lot line. For the purposes of this covenant, eaves, steps and open porches shall not be considered as a part of a building, provided, however, that this shall not be construed to permit any portion of a building on a lot to encroach upon another lot.

\* \* \*

"9) The architectural control committee is composed of: Marshall W. Coffman, Hugh M. McCaffrey, Jr., and James R. Harris. A majority of the committee may designate a representative to act for it. In the event of death or resignation of any member of the committee, the remaining members shall have full authority to designate a successor. Neither the members of the committee, nor its designated representatives, shall be entitled to any compensation for services performed pursuant to this covenant. At any time, the then record owners of a majority of the lots shall have the power through a duly recorded written instrument to change the membership of the committee or to withdraw from the committee or restore to it any of its powers and duties.

"10) The committee's approval or disapproval as required in these covenants shall be in writing. In the event the committee, or its designated representative, fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with."

\* \* \*

It was stipulated that the Fineins had constructed their wooden fence within 25 feet of the street line in May, 1971, and that the Hales had constructed their chain link fence within 25 feet of the street line in May, 1972. The evidence showed that the Hale fence was erected in a single day and that shortly thereafter complainants asked the Fineins and Hales to move their fences back the required distance from the respective street lines. When these requests were refused complainants referred the question to the Architectural Control Committee for the subdivision. The Committee conferred with Finein and Hale and, by letters dated July 10, 1972, advised them that their fences were in violation of the restrictive covenants, and that the Committee declined to give retroactive approval to the violations. Riordan testified that on New Year's Day, 1973, he again asked Hale to remove his fence voluntarily, but Hale declined to do so. The bill of complaint was filed June 5, 1973.

The chancellor ruled that, although the Hales and Fineins

were charged with notice of the restrictive covenants, the complainants (and the Architectural Control Committee) had waived any violations thereof in the erection of the fences by not acting within a reasonable time in compliance with the provisions of restrictive covenant (10). We disagree.

Restrictive covenants that do not contain unconstitutionally discriminatory provisions are widely accepted contractual devices designed to maintain property values in residential subdivisions. Such covenants must be strictly construed, and the burden is on one who seeks to enforce them to show that they are applicable to the acts of which he complains. Nevertheless, when applicable, the covenants will be enforced. *Traylor* v. *Holloway*, 206 Va. 257, 142 S.E.2d 521 (1965).

Here, covenant (2) requires application to and approval by the Architectural Control Committee before any fence may be located nearer to any street than the minimum building setback line (25 feet). Covenant (10) requires written approval or disapproval by the Committee. This covenant also provides that if the Committee fails to act within 30 days after submission to it of plans and specifications, or, if no suit to enjoin the construction has been commenced prior to its completion, approval will not be required, and the applicable covenants shall be deemed to have been complied with. This presumed compliance with the covenants, however, does not relate to location of fences for which Committee approval has not been sought, within areas proscribed by covenants (2) and (4).

The provision in covenant (10) that compliance will be presumed from completion of construction prior to a suit for injunction contemplates construction projects that will afford other lot owners ample time to take action to enforce the restrictions. A fence, such as that of the Hales, however, may be erected in a matter of hours and is not, therefore, a construction project to which the provision applies. To hold otherwise would unfairly penalize an interested lot owner who happens to be away from home for a few days, or even for a few hours, by denying him his right to insist that speedily completed construction projects, for which no applications for approval have been submitted to the Committee, are built in compliance with the setback restrictions. Hence, as the complainants in this case were not required to act before completion of the fences, there is no presumption of compliance by the Hales

and Fineins, and the chancellor erred in ruling that the complainants were barred by the provisions of convenant (10).

■ Moreover, the record gives no basis for application of the doctrine of laches to bar complainants' effort to enforce the covenants. Mere lapse of time, unaccompanied by circumstances affording evidence of a presumption that the right has been abandoned, does not constitute laches. *Gilley* v. *Nidermaier*, 176 Va. 32, 43, 10 S.E.2d 484, 489 (1940).

Here, complainants acted promptly after erection of the Hale fence to have both the Hale and the Finein fences relocated. Complainants unsuccessfully sought to persuade the Hales and Fineins voluntarily to bring their fences into compliance with the covenants. Complainants then communicated with the Westwood Park Civic Association, the organization of property owners in the subdivision. By letter of June 8, 1972, the President of the Association notified Hale that complaints about his fence had been investigated by the Architectural Control Committee, that the Committee found that the fence violated covenants (2) and (10), and that Hale was requested to meet with the Committee. Thereafter, both Hale and Finein appeared before the Committee, with the result that the Hales and the Fineins were notified that they were in violation of the covenants and that the Committee would not approve the violations. Complainants, as they testified, understandably were reluctant to institute court proceedings against the Hales and Fineins except as a last resort. Furthermore, in the absence of evidence that any delay in bringing the controversy into court has prejudiced the Hales or the Fineins, the bar of laches is not applicable. *Valley Bank* v. *Fidelity Co.*, 153 Va. 484, 494-96, 150 S.E. 403, 406-07 (1929).

■ We find no merit in the contentions advanced by the Hales and the Fineins in the trial court that the Architectural Control Committee had not been properly constituted in compliance with the provisions of covenant (9). The record shows that on February 15, 1967, the three original members resigned and appointed three new members, who thereafter functioned as the Committee. This was sufficient compliance with covenant (9).

For the reasons assigned, the final decree is reversed and the case remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*