## EDITH PRATT MASTERSON

### V.

## BOARD OF ZONING APPEALS OF THE CITY OF VIRGINIA BEACH, ET AL.

Record No. 850206

March 6, 1987

Present: All the Justices

*Edward T. Caton (Barry Randolph Koch; Caton & Koch, P.C.,* on brief), for appellant.

*William M. Macali, Assistant City Attorney; Grover C. Wright, Jr. (J. Dale Bimson, City Attorney; Kevin J. Cosgrove, Assistant City Attorney,* on briefs), for appellees.

COCHRAN, J., delivered the opinion of the Court.

This appeal arises from two separate actions filed by Virginia Beach residents in an attempt to prevent the construction of a highrise hotel and adjoining conference center which the residents claimed would violate the local zoning ordinance.

I.

Neptune Associates (Neptune), owner and developer of an oceanfront property in Virginia Beach, applied for approval of a site plan for construction of a 17-story hotel adjacent to an existing five-story motel to the south and a one-story restaurant to the north. This portion of the proposed development was situated on the lot located east of Ocean Avenue, between 56th and 57th Streets. Directly across Ocean Avenue to the west of this lot, the developer proposed removal of four existing two-story motel units and construction of a two-story conference center to be connected to the hotel tower by a pedestrian bridge crossing Ocean Avenue, denominated on the site plan as a 20-foot alley. The remainder of the lot surrounding the conference center would provide parking for the entire hotel complex, as it had previously provided parking for the existing motel. Finally, the developer proposed use of 22 additional parking spaces on the corner lot to the northwest of the intersection of 57th Street and Ocean Avenue, designated "lot 15," a lot previously used for parking for the existing motel. On July 6, 1984,[1] a building permit approving this plan was issued by an official of the City of Virginia Beach.

---

[1] The parties disputed the date on which the permit was issued, but the trial court found that final approval of the site plan was given July 6 when the zoning administrator made a final review of the site plan. This ruling is not challenged on appeal.

On August 1, 1984, Edith Pratt Masterson and eight others,[2] residents of the area surrounding the proposed development (collectively, the residents), filed an appeal with the Board of Zoning Appeals of the City of Virginia Beach (the Board) pursuant to Code § 15.1-496.1.[3] They requested revocation of the building permit and a stay of construction, alleging that the site plan for the project violated the zoning ordinance by failing to meet front, side, and rear setback requirements and by failing to meet parking requirements.[4] Following a hearing on September 5, 1984, at which the Board heard evidence and arguments by counsel, the Board voted to uphold the decision of the zoning official granting the permit, upon the developer's assurance that the hotel's oceanfront setback would be changed to meet the 35-foot setback requirement for a building of its height.

On September 12, 1984, the residents filed a petition for a writ of certiorari in the Circuit Court of Virginia Beach under Code § 15.1-497,[5] seeking review of the Board's decision and a stay of

[2] Masterson is the sole appellant in this case, the other residents having withdrawn as appellants, with leave of this Court, by orders entered June 18, 1985, and August 15, 1985.

[3] Code § 15.1-496.1 provides, in part:

An appeal to the board may be taken by any person aggrieved or by any officer, department, board or bureau of the county or municipality affected by any decision of the zoning administrator or from any order, requirement, decision or determination made by any other administrative officer in the administration or enforcement of this article or any ordinance adopted pursuant thereto.

Such appeal shall be taken within thirty days after the decision appealed from by filing with the zoning administrator, and with the board, a notice of appeal specifying the grounds thereof.

[4] The residents also alleged violations of zoning ordinance requirements as to off-street loading, signs, and fences. The rulings below on these issues are not challenged in this appeal.

[5] Code § 15.1-497 provides, in part:

Any person or persons jointly or severally aggrieved by any decision of the board of zoning appeals, or any taxpayer or any officer, department, board or bureau of the county or municipality, may present to the circuit court of the county or city a petition specifying the grounds on which aggrieved within thirty days after the filing of the decision in the office of the board.

Upon the presentation of such petition, the court shall allow a writ of certiorari to review the decision of the board of zoning appeals . . . . The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the board and on due cause shown, grant a restraining order.

. . . .

If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a commissioner

construction. Neptune intervened as a defendant and, together with the Board, contended that the appeal to the Board had not been perfected within the requirements of § 15.1-496.1. Finding that the appeal had been filed within the required 30 days of the issuance of the building permit and the final decision of the zoning administrator on July 6, the court sustained the Board's earlier action in accepting jurisdiction of the appeal. This ruling is not challenged on appeal.

Because of the challenge to the timeliness of their appeal to the Board under § 15.1-496.1, the residents brought a separate chancery suit to stop the development pursuant to Code § 15.1-496.3.[6] By bill of complaint filed September 14, 1984, they sought to enjoin the proposed construction, again alleging the building permit was illegal and void because issued in violation of the zoning ordinance. This chancery suit and the appeal from the Board's decision were consolidated for trial, but the court dismissed the chancery suit. Finding that the residents had actual notice of issuance of the building permit as of August 1, the date on which they filed their appeal with the Board, and that construction had begun before August 1, the court ruled they had failed to file their bill of complaint within the 15-day period allowed under § 15.1-496.3. The appeal of the Board's decision, however, proceeded on the merits, and the trial court, by order dated December 13, 1984, affirmed the Board's determination in all respects. Masterson appealed both cases to this Court. The developers proceeded at their own risk to resume construction until the project was completed.

## II.

In this Court, Neptune moved to dismiss the appeal arising from the Board proceeding, contending that jurisdiction of the ap-

to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

[6] Code § 15.1-496.3 provides, in part:

Where a building permit has been issued and the construction of the building for which such permit was issued is subsequently sought to be prevented, restrained, corrected or abated as a violation of the zoning ordinance, by suit filed within fifteen days after the start of construction by a person who had no actual notice of the issuance of the permit, the court may hear and determine the issues raised in the litigation even though no appeal was taken from the decision of the administrative officer to the board of zoning appeals.

peal properly lies in the Court of Appeals under Code § 17-116.05(1), which provides for appeals to that court from decisions of circuit courts on appeal from decisions of administrative agencies. In *Va. Beach Beautification Comm.* v. *Bd. of Zoning*, 231 Va. 415, 417, 344 S.E.2d 899, 901 (1986), we held that boards of zoning appeals are not administrative agencies for purposes of § 17-116.05(1). Appeals from final decisions of circuit courts on appeal from decisions of boards of zoning appeals are properly brought in this Court. *Id.*, 344 S.E.2d at 901. Accordingly, we overrule the motion to dismiss.

## III.

Masterson contends that the court erred in ruling that her chancery suit to enjoin the construction failed to meet the statutory requirement that it be filed "within fifteen days after the start of construction by a person who had no actual notice of the issuance of the permit." Both this suit and the appeal from the Board were brought for identical relief based on identical grounds. We hold that any error in dismissal of the chancery suit, therefore, was harmless because the appeal from the Board decision proceeded to a full resolution on the merits of all the substantive issues in the cases.

## IV.

The existing restaurant and five-story motel on the oceanfront lot predated the zoning ordinance now in effect and, with respect to minimum front, side, and rear setback requirements, are lawfully nonconforming. The site plan depicts an oceanfront setback for the hotel tower of 31.5 feet and side setbacks well within the 20-foot minimum required by the zoning ordinance. Unrefuted testimony at trial established that the oceanfront setback was corrected on working drawings and that the building was constructed to comply with the 35-foot setback requirement.[7] At the rear of the hotel lot, the structure extends to Ocean Avenue without any setback. Across Ocean Avenue on the conference center lot, parking spaces also extend to Ocean Avenue with no setback provided. Sixty-eight parking spaces along the sides of the lot do not meet

---

[7] In view of this evidence that the building actually conforms to the oceanfront requirement, we find no merit in Masterson's contention that this setback requirement has been violated.

current side setback and size requirements, but these parking areas coincide with existing nonconforming parking.

The residents contended that the new construction, connected to the existing nonconforming motel and restaurant buildings, amounts to an addition that increases the nonconformity in violation of § 105(d) of the Virginia Beach Code.[8] They also challenged the plan's continued use of the 68 nonconforming parking spaces in order to meet the 251-space requirement for the project, arguing that demolition of the motel units and construction of the conference center required that the entire lot be redrawn to eliminate all nonconforming parking spaces.

The City and Neptune asserted that, where additions to nonconforming structures are proposed, local zoning officials interpret § 105(d) as requiring only that the additions conform to present setback requirements, not that the existing nonconforming structures also be brought into conformity. Virginia Beach Zoning Administrator Patrick A. Janezeck testified that this has been the consistent administrative interpretation of the ordinance since its adoption in 1973.

The residents also challenged the failure to provide setbacks on either side of Ocean Avenue, contending that Ocean Avenue is not an alley[9] but a public street[10] along which appropriate setbacks are required. The City and Neptune contended, however, that these contiguous lots, separated by the 20-foot way, comprised a zoning lot,[11] for which no setbacks are required along the way that separates the lots.

---

[8] Virginia Beach Code § 105(d) provides, in part:

No nonconforming use shall be increased in magnitude. No nonconforming use shall be enlarged or extended to cover a greater land area than was occupied by the nonconformity on the effective date of this ordinance or amendment thereto. . . . No nonconforming structure shall be enlarged, extended, reconstructed, or structurally altered, if the effect is to increase the nonconformity.

[9] Virginia Beach Code § 111 defines "alleys" as "minor ways used primarily for vehicular access to the rear or side of properties otherwise abutting a street."

[10] Virginia Beach Code § 111 defines "street":

A vehicular way, whether public or private, (which may also serve in part as a way for pedestrian traffic) whether called street, highway, thoroughfare, parkway, throughway, road, avenue, boulevard, lane, place, alley, mall or otherwise designated.

[11] Virginia Beach Code § 111 also defines "zoning lot":

A lot or any portion thereof, or contiguous lots of the same ownership within a single zoning district, which are to be used, developed or built upon as a unit. For the purpose of this definition, lots of the same ownership separated solely by an alley

Both the Board and the trial court upheld the zoning administrator's interpretation and application of the zoning ordinance on these issues. In challeging these rulings on appeal, Masterson reiterates the residents' arguments made below. We find these arguments unpersuasive.

The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance. *Bd. of Zoning App.* v. *Bond*, 225 Va. 177, 179-80, 300 S.E.2d 781, 782 (1983); *Alleghany Enterprises* v. *Covington*, 217 Va. 64, 67, 225 S.E.2d 383, 385 (1976). A circuit court decision affirming a board of zoning appeals determination is also accorded this presumption of correctness on appeal to this Court. *Natrella* v. *Board of Zoning Appeals*, 231 Va. 451, 456, 345 S.E.2d 295, 299 (1986).

A consistent administrative construction of an ordinance by the officials charged with its enforcement is entitled to great weight. *Rountree Corp.* v. *City of Richmond*, 188 Va. 701, 712, 51 S.E.2d 256, 261 (1949). While this rule is more often applied to cases in which the administrative construction has continued and been acquiesced in for a long period of time, it is not confined to such cases. *Richmond Food Stores* v. *Richmond*, 177 Va. 592, 599, 15 S.E.2d 328, 331 (1941) (rule followed where tax commissioner had interpreted provisions of city code consistently for three years).

We do not agree with Masterson that the hotel construction violates § 105(d) of the Virginia Beach Code, *supra* n.8, by increasing the existing nonconformity. She asserts that, under this provision, no nonconforming structure may be enlarged, extended, reconstructed, or structurally altered unless the nonconformity is eliminated; an addition to the structure necessarily increases the nonconformity. The plain language of § 105(d), however, refutes such a construction by providing that "[n]o nonconforming structure shall be enlarged, extended, reconstructed, or structurally altered, *if the effect is to increase the nonconformity.*" (Emphasis added.) The clear implication of the final phrase of this sentence is that additions or alterations may or may not result in an in-

of no more than twenty (20) feet in width and by a distance not exceeding the width of the alley shall be considered contiguous.

crease in the nonconformity. The only reasonable construction of this language, then, is that it allows additions or alterations that themselves conform to zoning requirements, as such changes cannot also increase the nonconformity. *See Gagne* v. *Lewiston Crushed Stone Co.*, 367 A.2d 613, 622 (Me. 1976) (physical attachment of a permitted use to a nonconforming use does not constitute an "enlargement" of the nonconforming use); *Town of Seabrook* v. *D'Agata*, 116 N.H. 472, 473, 362 A.2d 182, 183 (1976) ("expansion of the nonconforming use" means "expansion in the nonconforming features").

Even if we assumed, however, that the language is ambiguous and also lends itself to Masterson's interpretation, we would be constrained to adopt the interpretation of the local zoning officials, an interpretation consistently applied since the enactment of the zoning ordinance in 1973. Indeed, the zoning administrator confirmed that this interpretation applies equally to residential property. If an owner's house lawfully does not meet one side setback and the owner proposes an addition to the other side of his house that conforms to current requirements, he is not required to tear down the nonconforming portion of the house; nor is he precluded forever from enlarging his house because of the nonconformity. Under this interpretation, which we hold was properly applied, the new hotel unit, which itself complies with the side setback requirement, does not increase the nonconformity. Similarly, the removal of motel units and construction of a conforming conference center on the adjoining lot does not increase the nonconformity of the existing 68 parking spaces lying outside the side setback requirement.

Nor do we agree with Masterson that the lots failed to provide adequate setbacks along Ocean Avenue.[12] We find that Ocean Avenue meets the statutory definition of both an alley,

---

[12] Masterson contends, as she does with regard to Ocean Avenue, that setbacks were required along a 20-foot easement for public passage on the conference center lot. During proceedings in April and May 1984, Neptune sought from the City and was granted a license to build a pedestrian walkway and thereby encroach over Ocean Avenue, subject to the condition that Neptune grant the City an easement for a 20-foot public right-of-way over a portion of its property. The easement would be extinguished by the City's revocation of the license to encroach over Ocean Avenue or by the City's use of Ocean Avenue as a public right-of-way. The easement passed through the paved entrance to the conference center, parallel to and about 10 feet from Ocean Avenue. Our ruling on the failure to provide setbacks along Ocean Avenue applies with equal force to the issue of setbacks along the 20-foot easement, and we do not therefore treat the easement separately.

*supra* n.9, and a street, *supra* n.10. The "alley" is 20 feet in width, and the lots, both zoned H-1 for hotel use, meet the requirements that they have the same zoning and the same ownership. Thus, we cannot say that the zoning administrator's interpretation of the contiguous lots as a "zoning lot" for purposes of the ordinance is an erroneous application of the law or a violation of the purpose and intent of the ordinance. Accordingly, we will affirm the judgment of the trial court in respect to the foregoing questions.

## V.

In the proceeding before the Board, the residents also challenged the site plan's proposed use of lot 15 for 22 parking spaces needed to meet the 251-space requirement, contending that such use is unlawful because the lot is zoned for residential use. The City and Neptune asserted that the use predated the residential zoning and is therefore lawfully nonconforming.

The site plan in evidence shows and the parties agree that lot 15 is presently zoned residential. John B. Smith, a prior owner of the motel property and lot 15, testified before the Board that the lot was zoned for residential duplex use in 1957 when he bought it. He said that a building on the property was torn down in 1957 or 1958 and the lot has been used since that time for parking for the motel, although he never sought a zoning change or a use permit for parking. Robert J. Scott, director of planning for the City, stated in a letter to the trial court that his records reflected a residential duplex zoning for lot 15 from 1960 until the enactment of the current zoning ordinance in 1973. The planning department, however, had no record of the lot's zoning prior to 1960.

In the trial court, one of the residents testified that he had known of the lot's use for parking since the building on the lot was removed. Another said that he had known of the use from the time he moved to the area, some 10 years prior to this proceeding. Masterson, however, testified that she did not believe the lot was being used for parking in 1967 when she and others in the neighborhood had previously raised objections to various uses of lot 15 and the conference center lot. These three witnesses conceded that they had never brought suit to prohibit the use of lot 15 for commercial parking.

The court ruled that the burden is on the party complaining of an illegal use to show how the property was zoned when the use

began. It held that there was insufficient evidence to support a finding that the property was zoned for residential duplex use in 1957. Masterson contends that the court erred in placing on the residents the burden of showing that the use was not a lawful non-conforming use. We agree.

In a civil action in which a use is challenged as illegal, the challenging party has the initial burden of producing evidence to show the uses permitted in the zoning district in which the land is located and that the use of the land is not a permitted use. Upon this showing, the burden shifts to the landowner to show that his use is a lawful nonconforming use. *Knowlton* v. *Browning-Ferris*, 220 Va. 571, 574, 260 S.E.2d 232, 235 (1979). The evidence is clear that the current zoning of lot 15 is residential and that accessory commercial parking is not a permitted use in a residential district. Thus, the burden fell upon Neptune to establish that its nonconforming use of the lot is lawful. To meet this burden, Neptune had to prove that its use began before the residential zoning restriction applied. This it failed to do. Indeed, the testimony of Smith affirmatively showed that the commercial use began after such use was no longer permitted.

In the trial court, the City and Neptune raised for the first time the defense of laches, arguing that the residents could not challenge the use of lot 15 because they had knowledge of the use but failed to act for 27 years. Although it acknowledged that there was "some question" about the duration and continuity of the use of the lot for parking, the court held that the residents were barred from complaining of the use "at this late date."

In order to uphold the court's conclusion that the residents were barred by laches, we would have to decide that this equitable defense is available in a proceeding before a board of zoning appeals, which on appeal becomes an action at law in the circuit court. Additionally, we would have to hold that the defense is not waived by a failure to assert it in the board proceeding. We decline to decide these questions here, however, because we find that laches, even if available as a defense in this case, has not been shown.

Laches is the failure to assert a known right for an unexplained length of time under circumstances prejudicial to an adverse party. *See Meredith* v. *Goodwyn*, 219 Va. 1025, 1028-29, 254 S.E.2d 74, 76 (1979); *Pittman* v. *Pittman*, 208 Va. 476, 479-80, 158 S.E.2d 746, 749 (1968); *Finkel Products* v. *Bell*, 205 Va.

927, 933, 140 S.E.2d 695, 699 (1965). Delay alone does not establish laches; absent prejudice resulting from a party's delay, the bar of laches is not applicable. *Riordan* v. *Hale*, 215 Va. 638, 642, 212 S.E.2d 65, 68 (1975); *Shirley* v. *Van Every*, 159 Va. 762, 775, 167 S.E. 345, 349-50 (1933). The burden of proving laches rests on the party asserting that defense. *Morris* v. *Mosby*, 227 Va. 517, 521-22, 317 S.E.2d 493, 496 (1984); *Pittman*, 208 Va. at 479, 158 S.E.2d at 749.

In this case, as the trial court noted, the evidence of delay was inconclusive. Only one of the residents was shown to have known of the use when it began in 1957 or 1958. Two other residents had learned of it more than 10 years later, and no evidence was adduced to show when the remaining residents obtained knowledge of the use. More importantly, the City and Neptune failed to present any evidence of prejudice as a result of the residents' delay in challenging the use.

█ A finding of laches rests primarily in the discretion of the court. *Morris*, 227 Va. at 521, 317 S.E.2d at 496. But where, as here, there is no evidence to support the necessary element of prejudice, the trial court's application of laches cannot be sustained. *See Riordan*, 215 Va. at 642, 212 S.E.2d at 68.

Accordingly, we hold that the trial court erred in ruling that the use of lot 15 for commercial parking predated the residential zoning and is a lawful nonconforming use. We will reverse the judgment of the trial court in this respect and remand the case for such further proceedings, consistent with the views expressed herein, as may be necessary to insure that the developer bring the project into compliance with the zoning ordinance's parking requirements.

*Affirmed in part;*
*reversed in part;*
*and remanded.*