# CIRCUIT COURT OF FAIRFAX COUNTY

Richard William Horner et al.

v.

Zoning Appeals Board
of Fairfax County et al.

September 4, 2007

Case No. CL 2006-7696

BY JUDGE RANDY I. BELLOWS

This matter is presently before the Court on the petitioners' appeal of a decision rendered by the Fairfax County Board of Zoning Appeals ("BZA") entered on May 23, 2006. In that decision, after a public hearing, the BZA voted four to three to deny the petitioners' appeal asking the BZA to overturn a decision by the Deputy Zoning Administrator to grant the Guilmards a building permit and to allow them to construct a home office attached to an existing garage on their property without obtaining a variance. Subsequently, pursuant to Va. Code § 15.2-2314 (2007), petitioners filed the instant appeal. After presiding over oral argument on this matter and careful consideration of the parties' memoranda of law, the Court is prepared to rule on this matter.

## I. *Background*

This case concerns a property dispute between two McLean, Virginia, adjacent property owners, the Horners and the Guilmards. The Guilmards' property is located at 1426 Colleen Lane and zoned to the R-3 District. BZA Resp. Mem. 1. In 1985, the Guilmards applied to the BZA for a variance to allow them to construct a detached garage which extended into the twelve foot side yard setback. Property owners are required to keep a side yard setback of twelve feet from their property line free from structures and buildings, by the Fairfax County Zoning Ordinance (hereinafter "Zoning Ordinance") § 3-307. However, property owners may petition the BZA for variances to allow them to construct a structure within the required twelve foot side yard setback. The Guilmards filed such a petition.

On November 7, 1985, the BZA approved the Guilmards' variance request and permitted the Guilmards to reduce the size of the side yard setback for the purpose of constructing the garage. The Horners did not object to the Guilmards' variance request in 1985. Pet. Mot. 2. The variance specifically allowed the Guilmards to build their garage within five feet from the property line shared with the Horners, thus reducing the side yard setback by seven feet. In 1986, the Guilmards completed construction on their garage, which measured twenty-four feet wide, twenty-four feet long, and twelve feet high.

The Guilmards used this structure as a garage without objection or challenge from the Horners until late 2005. At some point in late 2005, the Guilmards informed the Horners that they intended to build an additional structure onto their garage to accommodate a home office. On November 16, 2005, the Guilmards submitted plans to Fairfax County to add a second story attachment to the garage. According to the plans, the proposed second story did not extend into the twelve foot minimum required side yard. BZA Resp. Mem. 1-2. On January 3, 2006, the County approved the Guilmards' application for a building permit to begin construction on the new home office. BZA Resp. Mem. 2.

On January 9, 2006, Deputy Zoning Administrator Leslie Johnson determined that an amendment to the 1985 variance was not required and that the building permit was properly issued. On February 2, 2006, the Horners appealed Johnson's January 9, 2006, decision to the BZA, arguing that the Guilmards needed to obtain an amendment to the 1985 variance before building the home office addition. BZA Resp. Mem. 2. On May 23, 2006, the BZA upheld Ms. Johnson's January 9, 2006, decision. The Horners filed a motion to reconsider which the BZA denied on June 6,

2006. *Id.* On June 20, 2006, the Horners filed a writ of certiorari to the Circuit Court pursuant to Va. Code § 15.2-2314 (2007) challenging the BZA's May 23, 2006 decision.

## II. *The Parties' Positions*

### A. *Petitioners*

At the outset, it should be noted that the Horners state that they did not have a problem "with what was approved in 1985." Pet. Mem. 11. Rather, the Horners filed the present petition because in their eyes, "what now exists [on their adjacent neighbors' property] is hugely different [from what was approved by the BZA in 1985]." *Id.* According to the Horners, "the variance is no longer the same." *Id.* See also 5/9/07 Hearing 9 (indicating that the Horners believe that the Guilmards completely "gutted [and] destroyed the garage"). The crux of the Horners' position is that the Guilmards' modifications to their existing garage amount to an "eviscerat[ion] of the [1985] variance." Pet. Mem. 14. In other words, the Horners contend that the BZA's decision incorrectly interprets the scope of the 1985 variance. According to the Horners, the 1985 variance was "approved for the specific addition shown on the plot included with the application," *id.* at 17, including the specific dimensions and location of the Guilmards' garage, and the Guilmards' proposed construction did not comply with the variance because it altered both the dimension and proposed use of the structure. The Horners maintain that the 1985 variance never contemplated the construction of a home office and such a structural addition is "substantially and materially different from [the variance approved in] 1985." Pet. Mem. 10.

The Horners also argue that there is a bulk plane violation and that the building as it exists is "illegal." Pet. Mem. 9. The BZA makes two arguments in response: first, it argues that the bulk plane provisions of Zoning Ordinance § 3-307(2)(B) do not apply to the Guilmards' home office addition. Rather, bulk plane provisions apply only to "determine the minimum yard requirements for *principal* structures other than single family dwellings." BZA Resp. Mem. 7-8. The Guilmards' garage with the new home office addition is not a principal structure, but rather an "accessory" structure. *Id.* Consequently, the BZA contends, the bulk plane requirements do not apply to the Guilmards' home office. Second, it argues that this matter is being raised for the first time and was not asserted in the Complaint for Writ of Certiorari. Therefore, argues the BZA, it is not properly the subject of a BZA appeal. BZA Resp. Mem. 8-9. The Court is not persuaded by the Horners' argument.

## B. *Respondents Guilmards*

The Guilmards acknowledge that the "home office" is connected to the garage which was the subject of the 1985 variance; however, the Guilmards maintain that the home office is built entirely within the by-right area and that the garage "has not been moved [at all]." Resp. Mem. 3. The Guilmards state that the "footprint of [the] 24 foot by 24 foot garage has not changed[;] no doors or windows have been replaced or moved[;] only [] damaged materials have been replaced." Resp. Mem. 3. Moreover, the Guilmards claim that the "portion of the garage within the twelve foot setback area is strictly identical and remains as required by the building permit." *Id*. In other words, the Guilmards argue that the actual location of the new structure is not within that portion of the garage which was permitted by the variance to extend seven feet beyond the required twelve foot setback. Rather, the new structure is in that portion of their property where they have a right to build which is only limited by zoning restrictions which do not prevent the Guilmards' new home office. To support this position, the Guilmards claim that the "allowance for the garage to encroach into the setback did not come in exchange for relinquishing the right to engage in by-right development on the rest of the property." Resp. Mem. 7. Further, the Guilmards contend that the conditions imposed by the 1985 variance are limited to the area within the set-back allowed by the variance.

Moreover, the Guilmards claim that Mr. Guilmard sought guidance from the County staff on February 1, 2005, and on other occasions regarding the new addition and was advised that he could proceed as proposed. Resp. Mem. Finally, the Guilmards argue that the Horners do not enjoy a light or scenic easement over the Guilmards' property.

## C. *Respondents BZA*

According to the BZA, its decision that an amendment to the 1985 variance was not required was based on the fact that "there would not be any change in height or location to that portion of the [Guilmards'] existing garage that extended into the minimum required side yard for which the [v]ariance was approved and the proposed [home office] addition [] meet[s] the minimum side yard requirements [] for the [] district." BZA Resp. Mem. 2. The BZA argues that the language of the 1985 variance does not preclude

attachments to the Guilmards' garage;[1] rather, as long as the attachments comply with the applicable zoning ordinances, the additions are permitted without an amendment to the variance. *Id.* at 3. According to the BZA, the "second story addition to the garage does not violate the Zoning Ordinance." *Id.* at 5. See also 5/9/07 Hearing 44-48 and 50 (describing the addition of the home office to the existing detached garage as "a by-right onto a structure that had been approved by a variance").

To support its position that the Guilmards did not have to obtain an amendment to the 1985 variance because the new home office structure was not located within the side yard setback, the BZA relies on *Masterson v. Board of Zoning Appeals*, 233 Va. 37 (1987). *Masterson*, discussed in detail below, involved an existing "nonconforming use," not an existing variance. The difference between a "nonconforming use" structure and a "variance" structure is that a nonconforming use structure is in existence before a zoning ordinance is passed and is permitted to remain in use despite its conflict with the zoning ordinance. A variance structure is a structure that does not comply with an existing zoning ordinance, but is still permitted to be constructed despite the conflict with the existing zoning ordinance. The nonconforming use exists before the zoning ordinance while the variance exists after the zoning ordinance. Compare, i.e., *Patton v. City of Galax*, 269 Va. 219, 226 (2005), and *Town of Front Royal v. Media*, 261 Va. 287, 293 (2001) (defining nonconforming use), with *Tolman v. Board of Zoning Appeals*, 46 Va. Cir. 359, 360 (1998) (defining variances). See, also 5/9/07 Hearing 61 (discussing the difference between a nonconforming use and a variance).

### III. *Legal Discussion*

#### A. *Standard of Review*

The parties agree that, under the statute prevailing as of the date of the decision from which this appeal was taken, the decision of the BZA is "presumed to be correct." That presumption may be rebutted by proving by a

---

[1] See also 5/9/07 Hearing 50 (stating that "[t]here is nothing in this variance on the face of the language of the variance that says that they can't do that [referring to adding a new structure within the by-right property area that attaches to the variance structure] . . . [i]t doesn't say that they can't add to that structure so long as it complies with the zoning ordinance"). See also *id.* at 57 (stating that "there's isn't anything in here [referring to the 1985 variance] that says they can't add an office onto it if that's permitted by right").

preponderance of the evidence that the BZA erred in its decision. When the issue, however, is a question of law, the appealing party must show that the BZA either applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance. See Va. Code § 15.2-2314. As the Supreme Court of Virginia has stated: "A decision by a board of zoning appeals based upon correct principles of law is presumed correct and will not be disturbed on appeal unless plainly wrong or in violation of the purpose and intent of the zoning ordinance." *National Mem. Park v. Board of Zoning Appeals*, 232 Va. 89 (1986). See also *Masterson*, 233 Va. at 44 (stating that "[t]he decision of the board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance" (quoting *Board of Zoning Appeals v. Bond*, 225 Va. 177, 179-80 (1983), and *Allegheny Enterprises v. Covington*, 217 Va. 64, 67 (1976))).

The instant case presents this Court with a "pure question of law," see Pet. Mem. 7. That question of law may be stated as follows. When new by-right construction is proposed which will be attached to an existing structure built pursuant to a variance, does the new construction require an additional variance even when the new construction does not involve, or encroach upon, that portion of the existing structure which required the original variance? For the reasons stated below, this Court concludes that the answer to this question is "no."

B. *Analysis*

On November 7, 1985, after a public hearing, and by a vote of four to one, the BZA granted the Guilmards a variance pursuant to Zoning Ordinance § 18-401 to allow the "construction of a detached garage 5.0 ft. from side lot line [] on property located at 1426 Colleen Lane." BZA Hearing Transcript, November 7, 1985, 182 (hereinafter BZA 11-7 Trns.). Furthermore, the 1985 variance imposed the following limitations on the Guilmards' construction of the detached garage: "[t]his variance is approved for the location and the specific addition shown on the plat included with this application and is not transferable to other land." *Id.* The plat included with the Guilmards' application for a variance described the proposed detached garage as a 24 foot by 24 foot garage with a height of twelve feet and located five feet off the side of the Guilmards' property line. *Id.*

On May 23, 2006, by a vote of four to three, the BZA concluded that the Guilmards did not need to obtain an amendment to the 1985 variance before they began construction on a new home office to be attached to the

garage. The BZA based its decision on the fact that the Guilmards' new home office was not located within the area of their property to which the variance applied. Although the new home office was attached to the garage which was built within the area of the property to which the variance applied, the home office was not itself within the portion of the Guilmards' property to which the 1985 variance applied. To put it another way, the BZA concluded that an amendment to the variance was not required because the home office was to be located on a portion of the Guilmards' property where they enjoyed a by-right to build.

This Court finds that the BZA's decision was correct and must be upheld. The case that comes closest to controlling the instant situation is *Masterson*. In *Masterson*, in which the Supreme Court of Virginia held that a structural addition to an existing nonconforming building did not require a variance approved by the BZA so long as the structural addition complies with existing zoning ordinance requirements. The *Masterson* petitioners challenged the BZA's decision to permit a hotel to build additions to an existing nonconforming building, arguing that the "new construction, connected to the existing nonconforming motel and restaurant buildings, amount[ed] to an addition that increase[ed] the nonconformity in violation of [the local zoning ordinance]." *Masterson*, 233 Va. at 43. The Court ruled otherwise. According to the *Masterson* Court, the local zoning ordinance did not require approval of additions to nonconforming buildings; rather, the zoning ordinance "allows additions or alterations that *themselves conform to the zoning requirements.*" *Id.* at 45 (emphasis added).

Significantly, the *Masterson* Court discusses the following hypothetical, which, even though it deals with a nonconforming use rather than a variance, is instructive:

> [i]f an owner's house lawfully does not meet one side setback and the owner proposes an addition to the other side of his house that conforms to current requirements, he is not required to tear down the nonconforming portion of the house; nor is he precluded forever from enlarging his house because of the nonconforming use.

*Id.*

The instant case did not present the BZA, nor this Court, with a situation in which a home owner sought to add to an existing detached garage within the portion of their property to which the variance applied. If that were the case, this Court would reach a different decision and find that the

Guilmards were required to obtain an amendment to the 1985 variance. But that is not the case. The home office is not located within the twelve foot side yard setback, see Resp. Ex. 1, and the fact that it is attached to a garage which is within the twelve foot side yard setback does not convert a by-right addition into an addition requiring a variance. Consequently, this Court finds that the BZA's decision was not plainly wrong or an application of erroneous principles of law.

The Court is aware of the fact that BZA Chairman DiGiulian, who made the motion to approve the Guilmards' variance in 1985, stated at the BZA's April 25, 2006, hearing, Tr. 23, that he would not have made the motion in 1985 had he been confronted with the home office/garage structure proposed two decades later. There are three responses to this: (1) while this Court has no doubt as to the sincerity of the Chairman's comments, one can only speculate as to what the BZA would have done in 1985 if presented with the Guilmards' current garage plus home office structure; (2) this is not a situation in which the Guilmards engaged in some zoning version of "bait and switch"; their home office addition was not a proposal made days after the garage variance was approved; to the contrary, twenty years elapsed before the addition was proposed; and (3) despite the Chairman's concerns, the BZA did vote on May 23, 2006, to deny the Horner's appeal.

Indeed, the Court concludes that the BZA's decision was correct. The Court also finds persuasive the BZA's assertion that the Fairfax County Zoning Ordinance "has been consistently interpreted by the Zoning Administrator . . . as allowing additions or alterations to structures permitted by variances provided the alterations or additions themselves conform to the Zoning Ordinance requirements by not increasing the specific feature of the structure that required the variance." BZA Resp. Mem. 5. See *Masterson*: "A consistent administrative construction of an ordinance by the officials charged with its enforcement is entitled to great weight." 233 Va. at 44 (citation omitted).

Consequently, the petitioners' petition is denied.