COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Russell and Malveaux
Argued at Norfolk, Virginia


CITY OF NEWPORT NEWS

v.        Record No. 1315-19-1

PENINSULA NEUROSURGICAL                    MEMORANDUM OPINION[*] BY
   ASSOCIATES, INC.                        JUDGE WESLEY G. RUSSELL, JR.
                                           MARCH 31, 2020
PENINSULA NEUROSURGICAL
   ASSOCIATES, INC.

v.        Record No. 1382-19-1

CITY OF NEWPORT NEWS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Adonica Baine, Senior Assistant City Attorney, for City of Newport
News.

Philip J. Geib (Philip J. Geib, P.C., on briefs), for Peninsula
Neurosurgical Associates, Inc.

In this consolidated appeal, the City of Newport News (the City) challenges a decision of

the Workers' Compensation Commission (Commission) awarding Peninsula Neurosurgical

Associates, Inc. (Neurosurgical Associates) payments for medical treatment it provided to June

Seals[1] (claimant) pursuant to a previous award of the Commission.  The City specifically

contends the Commission erred in excluding certain evidence and in finding that Neurosurgical

Associates' application for payment was not barred by the doctrine of laches.  Neurosurgical

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Seals, the claimant in the underlying workers' compensation claim, was given notice
when the matter was filed, but did not file a brief or otherwise participate in this matter.

Associates appeals the Commission's denial of its request for attorney's fees. Finding no reversible error, we affirm the judgment of the Commission in its entirety.

## BACKGROUND

In April 1995, claimant suffered a compensable injury to her back while she was working as a cardiac technician for the City's fire department. She filed a claim for wage and medical benefits with the Commission. Consistent with an agreement reached by the City and claimant, the Commission awarded claimant temporary total disability benefits for a defined period and medical benefits "for as long as necessary."[2]

In August 1995, claimant underwent a lumbar discectomy as a result of her injury; the doctor, who worked for Neurosurgical Associates, also found an extruded disk. Several years later, in October 1999, claimant went to the doctor for "recurrent back and left leg pain." The doctor determined that she "likely has recurrent disk disease . . . [that] is most likely related to her previous workman[']s compensation injury." She underwent an MRI, and the doctor eventually confirmed that "[t]his is recurrent disk disease; the same level as the prior problem."

About a year later, claimant again went to the doctor for "back pain." X-rays were taken, and she was treated with epidural steroid injections. A few months thereafter, in January 2002, claimant again complained of "[b]ack and leg pain" and reported that the epidurals she had been receiving were providing "good relief, but they don't last more than a month." An x-ray "reveal[ed] degenerative disk disease . . . pretty severe." The doctor, noting that claimant was experiencing "recurrent radicular pain" and that her "last MRI scan was not really normal[,]" ordered an additional MRI as well as x-rays. At her follow-up visit a month later, claimant received a diagnosis of "lumbar degenerative spondylolisthesis . . . and spinal stenosis and

---

[2] The award initially was entered on October 23, 1996, but an amended award was entered on June 7, 1997, to reflect a different average weekly wage.

associated lumbar degenerative disk disease . . . with disk herniation . . . ." Claimant and her doctor then discussed potential operative treatment.

Claimant elected to pursue operative treatment and underwent surgery in April 2002. She had a follow-up visit in July to review her progress. About five years later, she returned to the doctor, complaining of leg pain. The doctor determined that the pain was caused by a herniated disk.

The total cost of these doctor visits and treatments was $12,883. In due course, all bills were submitted to the City's third-party administrator (TPA), who in turn made payments on the City's behalf. Neurosurgical Associates received $6,714.18 for services rendered, but the remaining balance of $6,168.82 was not paid.

Sixteen years after claimant's last doctor's visit and almost twenty years after some of the treatment at issue, Neurosurgical Associates filed an application with the Commission seeking reimbursement from the City for the unpaid balance of $6,168.82. Neurosurgical Associates alleged that the City "fail[ed] to pay the reasonable and medically necessary medical costs for the treatment provided to the claimant as a result of the injuries sustained in the industrial accident of April 16, 1995." Neurosurgical Associates also requested an award of attorney's fees. The City defended on the grounds of "laches, spoliation, [and] prejudice to [the City] due to unreasonable delay."

Neurosurgical Associates' application was considered by the deputy commissioner at a hearing conducted on March 4, 2019. The deputy commissioner noted that there are "no issues of medical treatment, just medical pricing, between the parties . . . ." Neurosurgical Associates submitted records related to claimant's treatments, including letters from the doctor confirming that the treatments were causally related to the compensable accident, requests for authorization,

and approvals. Only two witnesses testified; both parties called Donna McCord, while Elaine Johnson testified on behalf of the City.

McCord testified that she had worked as Neurosurgical Associates' office manager since 1987. She related that she was responsible for all of Neurosurgical Associates' billing and thus was familiar with the billing procedures in place since 1995. She stated that in July 2018 she started an audit of workers' compensation files to determine whether there had been underpayments on past patient charges. She testified that prior to the audit, she was not aware that unpaid balances could be recouped from the City.

McCord relayed that bills for claimant's treatment dates had been submitted to the City's TPA. She confirmed that, although the charges totaled $12,883, Neurosurgical Associates received only $6,714.18 from the TPA. She could not recall whether specific payments came with an explanation of benefits or, if one had, whether it would have been destroyed.

She testified that Neurosurgical Associates utilized only one fee schedule and that she believed that the charges that had been billed were consistent with the prevailing community rate. McCord testified that Neurosurgical Associates "did a write-off" of the remaining balance of $6,168.82 for its own internal billing system. McCord conceded that she never notified the City or the TPA of the underpayments, but also averred that Neurosurgical Associates never agreed with the City or the TPA that it would not seek full payment or that either could close its files related to claimant's claim.

Johnson testified that she served as the acting director of the City's human resources department and oversaw City workers' compensation claims in that capacity. She stated that the City was self-insured and had been using a TPA to process claims since the early 1990s. Richard Flagship was the TPA when claimant first suffered her compensable injury, but soon thereafter

- 4 -

FARA became the City's TPA. The City, at some point later, switched TPAs again, first utilizing VML and then ultimately PMA in 2009.

Johnson stated that her office maintained a paper file for claimant, but there was no notice of any underpayments in it until Neurosurgical Associates filed its claim in 2018. On cross-examination, Johnson testified that, because claimant had been awarded an open medical award, the City continued to maintain records related to medical services, including printouts of bills and communications with doctors' offices and risk managers. She stated that "[a]nything that happened with the transitioning and the paying of the claim is in that file." The City entered into evidence a document depicting records from the FARA database to which the City had access; Johnson testified that there was nothing in the records indicating any reason for the discrepancy in the payments. Johnson was unaware of whether any explanation of benefits had accompanied any of the payments related to claimant.

Johnson also relayed her efforts to obtain relevant records from other sources. She contacted the City attorney's office and asked the office manager for any files that office had; she was informed that because more than ten years had elapsed since the last legal action on the claim, the records had been destroyed pursuant to pertinent records retention policy. She testified that PMA had no files for claimant because her case had been treated as closed at the time of the 2009 transition. Johnson further relayed that she also had attempted to contact FARA, but discovered the company no longer existed after having merged with York Risk Services in 2017. She communicated with York Risk Services, who had a record of the payments and corresponding log notes that had been made, but no "explanation of benefits, explanation of reviews, a claim summary, or anything that explained why a certain payment was made . . . ."

In an effort to show prejudice in the instant case, the City's counsel asked Johnson whether there previously had been "a successful claim involving FARA from a medical provider." Neurosurgical Associates objected to the question on relevance grounds. Counsel rephrased the question, specifically asking, "In the matter of the David Har[grave] case, did a medical provider make a claim for underpayment for a 2005 date of service regarding a payment made by FARA?"[3] Neurosurgical Associates again objected on relevance grounds, arguing that what happened in another case had no bearing on the instant matter. The City explained that it was attempting to show, through the Hargrave case evidence, "that there had been prior claims from 2005 where FARA was able to produce documents" but that no documents from that company were now currently available because of Neurosurgical Associates' delay in filing its claim.

The deputy commissioner sustained the objection. The deputy commissioner permitted the City to proffer what the evidence would have been. The City proffered that the records from the Hargrave case demonstrated that, in 2012, FARA had documentation allowing the City to assert defenses to a medical provider's claim regarding alleged underpayment related to a 2005 surgery. The City reasoned that if FARA maintained those records in the Hargrave case, it would have maintained them in the instant case. As a result, the City argued that, if Neurosurgical Associates had sought reimbursement while FARA was still a going concern, the City would have had access to similar documents that might assist it in defending against the application for payment.

---

[3] The David Hargrave case was another workers' compensation case in which a medical provider made an underpayment claim against the City years after the medical treatment had been provided. We refer to the evidence the City sought to introduce related to the Hargrave case as the Hargrave case evidence.

The deputy commissioner issued his decision on April 8, 2019. He concluded that "[t]he doctrine of laches [did] not bar [Neurosurgical Associates'] application" and that the doctrine of spoliation did not apply.[4]

Turning to the merits of Neurosurgical Associates' application, the deputy commissioner concluded that the medical services fell within the award of benefits and that the record supported a finding that the charges fell within the prevailing community rate. Accordingly, the deputy commissioner granted the application and ordered the City to pay Neurosurgical Associates the outstanding balance. Furthermore, the deputy commissioner awarded Neurosurgical Associates $3,000 in attorney's fees under Code § 65.2-713 because he concluded that the City "failed to prove that any of [its] defenses . . . were reasonable."

The City sought review by the full Commission, setting forth nine assignments of error in its request for review. Pertinent here, the City asserted that the deputy commissioner erred in failing to admit the City's proffered evidence regarding the Hargrave case, in finding that Neurosurgical Associates' application was not barred by laches, and in awarding Neurosurgical Associates attorney's fees.

In the normal course, the parties submitted their written statements on review. Despite having asserted nine assignments of error in its request for review, the City's written statement contained two sections. In the first, it sought reversal of the deputy commissioner on the grounds

---

[4] On appeal, the City asserts the deputy commissioner applied an incorrect standard in resolving its laches defense, requiring the City to demonstrate detrimental reliance on Neurosurgical Associates' failure to pursue the claim as opposed to demonstrating that it had been prejudiced by Neurosurgical Associates' failure to pursue the matter. Although the Commission summarized the reasoning of the deputy commissioner and found "no error" in the result, it did not expressly adopt the deputy commissioner's rationale and, in fact, rejected the laches defense because the City "did not sufficiently prove it was prejudiced by the [Neurosurgical Associates'] actions." (Footnote omitted). Because our appellate review is limited to final decisions of the Commission, see Code § 17.1-405(2), any error allegedly committed by the deputy commissioner that was not adopted by the Commission is not before us on appeal.

that laches barred Neurosurgical Associates' application for payment. In the second, it sought reversal of the deputy commissioner's award of attorney's fees to Neurosurgical Associates. Although the written statement contained a passing reference to the City's contention that "[t]he [d]eputy [c]ommissioner erred in failing to admit" evidence related to the Hargrave case, the written statement did not ask the Commission to take any action related to that alleged error.

The Commission conducted an on-the-record review and issued its opinion on July 26, 2019; the Commission affirmed the deputy commissioner's award of medical payments to Neurosurgical Associates but reversed the award of attorney's fees. Specifically, as regards the City's laches argument, the Commission "decline[d] to infer and presume that [Neurosurgical Associates] abandoned its claim" and found that the City "did not sufficiently prove it was prejudiced by [Neurosurgical Associates'] actions" in failing to pursue the application for payment earlier. Additionally, the Commission vacated the deputy commissioner's award of attorney's fees to Neurosurgical Associates. In doing so, the Commission explained that the City

> reasonably defended against the application. [Neurosurgical Associates] was seeking underpayment of medical services rendered numerous years ago. In response, [the City] raised appropriate arguments to counter the award as sought . . . . We recognize that the [City's] defenses were not successful. Yet such failure does not establish unreasonableness. Additionally, . . . this was not a situation where a party neglected the case, unnecessarily prolonged the dispute, failed to present evidence, or ignored Commission directives.

Having not been asked to do so in the City's written statement, the Commission did not address the deputy commissioner's evidentiary ruling related to the Hargrave case evidence.

Both parties appeal the Commission's decision to this Court. The City asserts that the "Commission erred in excluding evidence" from the Hargrave case and in determining that laches did not bar Neurosurgical Associates' application for payment. Neurosurgical Associates

- 8 -

asserts that the Commission erred in concluding that it was "not entitled to an award of attorney['s] fees pursuant to Virginia Code [§] 65.2-713(A)."

## ANALYSIS

### I. Hargrave case evidence

Although the City asserts that "the Commission erred in excluding" the Hargrave case evidence, a review of the Commission's opinion in that matter reveals that the *Commission* made no such ruling. The Commission's opinion contains no reference to the Hargrave case evidence and does not address whether it was admissible. Rather, it was the deputy commissioner, and not the Commission, that made the only ruling in the case related to the Hargrave case evidence. This fact is fatal to the City's claim on appeal.

As noted above, our appellate jurisdiction does not extend to decisions made by deputy commissioners; rather, we are limited to reviewing "final decision[s] of the Virginia Workers' Compensation Commission[.]" Code § 17.1-405(2). Thus, to the extent a litigant wishes to seek our review of a ruling initially made by a deputy commissioner, it must first obtain a final decision on the issue from the Commission, whether that decision adopts, modifies or rejects the initial ruling of the deputy commissioner. See, e.g., Mouhssinne v. Crystal City Laundry, 62 Va. App. 65, 82 (2013) (holding that we may not consider arguments related to rulings of deputy commissioners that are not ruled upon by the full Commission); Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253 (2011) (same).

Here, in its written statement on review before the Commission, the City did not ask the Commission to rule on the evidentiary issue or to consider the evidence that had been excluded. Having not been asked, the Commission did not rule on the issue. Because "we have no [C]ommission ruling to review[,]" Hodnett, 58 Va. App. at 253, we do not address the merits of

the City's argument regarding the deputy commissioner's exclusion of the Hargrave case evidence.

## II. Laches

Laches is an affirmative defense, Smith v. Woodlawn Const. Co., 235 Va. 424, 430 (1988), that grew out of equity practice. The purpose of this equitable doctrine is to prevent a litigant from gaining an unfair advantage from delaying its pursuit of an existing claim. Our Supreme Court has "defined laches as 'the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party.'" Stewart v. Lady, 251 Va. 106, 114 (1996) (quoting Princess Anne Hills v. Susan Constant Real Estate, 243 Va. 53, 58 (1992)). "The doctrine has no fixed guidelines—'no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances.'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 755 (2004) (quoting Stewart, 251 Va. at 114). "Delay alone does not establish laches; absent prejudice resulting from a party's delay, the bar of laches is not applicable." Masterson v. Bd. of Zoning Appeals, 233 Va. 37, 48 (1987). "The litigant raising laches as a defense bears the burden of demonstrating both the requisite delay and prejudice . . . [,]" and determining whether a litigant satisfied that burden implicates the Commission's "factfinding discretion[.]" Berglund Chevrolet, 43 Va. App. at 755. Whether the doctrine bars a claim in a given case "rests primarily in the discretion" of the tribunal. Morris v. Mosby, 227 Va. 517, 521 (1984); see also May v. R.A. Yancey Lumber Corp., 297 Va. 1, 18 (2019); Masterson, 233 Va. at 48. Thus, we review the Commission's rejection of the City's laches defense under the deferential abuse of discretion standard.

As the party with the burden to establish the laches defense, the City had to both produce evidence that it had been prejudiced by Neurosurgical Associates' delay in filing its application and have that evidence persuade the Commission as fact finder that the City had, in fact, suffered

prejudice. See generally SunTrust Bank v. PS Bus. Parks, L.P., 292 Va. 644, 652 (2016)

(discussing the burdens of production and persuasion).

Here, a review of the evidence admitted in the proceedings below reveals that the City

attempted to meet its burden largely by noting the passage of time, namely that nearly two

decades had passed from the time claimant received some of the care at issue and when

Neurosurgical Associates filed its application for payment with the Commission.[5]  Although a

two-decade delay is significant, the Commission was not convinced that the City had suffered

actual prejudice, finding that the City "did not sufficiently prove it was prejudiced" by

Neurosurgical Associates' delay in pursuing its application for payment.  We cannot say that the

Commission's conclusion in this regard represents an abuse of discretion.

"An abuse of discretion occurs only when reasonable jurists could not differ as to the

proper decision." Wynnycky v. Kozel, 71 Va. App. 177, 193 (2019) (quoting Reston Hosp. Ctr.,

LLC v. Remley, 63 Va. App. 755, 764 (2014)).  "[T]he abuse of discretion standard 'necessarily

implies that, for some decisions, conscientious jurists could reach different conclusions based on

exactly the same facts—yet still remain entirely reasonable.'" Id. (quoting Hamad v. Hamad,

61 Va. App. 593, 607 (2013)).  Accordingly, to reverse the Commission on this record, we would

have to find that every jurist would conclude that a twenty-year delay necessarily causes the

required prejudice, and thus, entitles a litigant to the protection of the laches bar.  In essence, we

---

[5] Although the Hargrave case evidence was not before the Commission, the City attempted to augment its passage of time argument by suggesting that documentary evidence may have existed at one time and was either destroyed because of records retention policies or disappeared when FARA ceased to be a going concern.  Given all of the testimony regarding such documentary evidence and the lack thereof, the Commission, in its role as fact finder, was not required to accept that such documentation existed or that it had been destroyed or lost as a result of Neurosurgical Associates' delay in filing its application for payment with the Commission.

would be finding that, as a matter of law, a near twenty-year delay automatically entitles a litigant to dismissal of a claim based on laches.

This we cannot do. As noted above, the doctrine of laches is not subject to such bright-line rules. Berglund Chevrolet, 43 Va. App. at 755. Thus, we must reject any argument that amounts to the passage of time "alone" being sufficient to "establish laches[.]" Masterson, 233 Va. at 48. Because we cannot create a hard and fast rule that the mere passage of time always entitles a party to the laches defense, we cannot say that the Commission, on this record, abused its discretion in finding a lack of the necessary prejudice. Accordingly, we affirm the decision of the Commission as it relates to laches in this matter.

### III.  Attorney's fees

In the proceedings below, Neurosurgical Associates sought an award of attorney's fees pursuant to Code § 65.2-713(A). Code § 65.2-713(A) provides that

> [i]f the Commission or any court before whom any proceedings are brought or defended by the employer or insurer under this title shall determine that such proceedings have been brought, prosecuted, or defended *without reasonable grounds*, it may assess against the employer or insurer who has so brought, prosecuted, or defended them the whole cost of the proceedings, including a reasonable attorney's fee, to be fixed by the Commission.

(Emphasis added). Finding that the City's laches defense was a reasonable, albeit unsuccessful, one, the Commission vacated the deputy commissioner's award of attorney's fees to Neurosurgical Associates and declined to make such an award. Neurosurgical Associates argues that the Commission's decision in this regard constituted reversible error. For the reasons that follow, we disagree with Neurosurgical Associates.

"The decision to assess fees or costs [pursuant to Code § 65.2-713] rests in the sound discretion of the [C]ommission and will be reversed only for an abuse of that discretion." Virginia Polytechnic Inst. & State Univ./ Commonwealth v. Posada, 47 Va. App. 150, 159

- 12 -

(2005). Thus, as with its decision regarding the application of laches, we can reverse the Commission's rejection of Neurosurgical Associates' request for attorney's fees only if "reasonable jurists could not differ as to the proper decision." Wynnycky, 71 Va. App. at 193 (quoting Reston Hosp. Ctr., 63 Va. App. at 764).

The reasonableness of a defense "is to be judged from the perspective of the employer, not the employee." Philip Morris USA, Inc. v. Mease, 62 Va. App. 190, 203 (2013) (quoting Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 716 (1993)). A defense is not unreasonable for the purposes of Code § 65.2-713(A) merely because "it is later proven misplaced or in error." Goad, 15 Va. App. at 716 (quoting Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 201 (1985)).

Here, the Commission found that, in asserting the laches defense, the City "reasonably defended against the application" filed by Neurosurgical Associates. We agree. Although the defense ultimately proved unsuccessful, there is nothing unreasonable about asserting that laches bars a claim that a party waits nearly two decades to assert. Although, on this record, the Commission found that the City failed to establish it had suffered actual prejudice due to Neurosurgical Associates' delay, we have not said and do not say that a different, equally reasonable decisionmaker viewing the same evidence could not have reached the opposite conclusion as an initial (as opposed to an appellate) matter. In short, there was nothing unreasonable about the City's assertion of the laches defense in this matter.[6] Accordingly, the

---

[6] There is nothing inconsistent in our affirming the Commission's rejection of the City's laches defense on the one hand and our conclusion that the defense was reasonably asserted and could have been successful if heard by a different decisionmaker on the other. Our decisions on these issues simply reflect that the underlying questions were committed to the sound discretion of the Commission and that the Commission's answers to those questions fit within the "bell-shaped curve of reasonability[,]" Hamad, 61 Va. App. at 607, which entitles them to deference on appeal.

Commission did not err in declining to award Neurosurgical Associates attorney's fees pursuant to Code § 65.2-713(A).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission in its entirety.

<u>Affirmed.</u>