Present:  Carrico, C.J., Compton, Stephenson, Lacy, Hassell,
 and Keenan, JJ., and Whiting, Senior Justice

WARREN D. STEWART, ET AL.
                         OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 950850         January 12, 1996

KARL W. LADY, ET AL.

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    J. Howe Brown, Jr., Judge


                              I.

     In this appeal, we must decide who are the lawful

members of the board of directors of The Seniors Coalition,

Inc. (TSC), a Virginia nonstock, nonprofit corporation which

has no members.

                              II.

     Warren D. Stewart, James G. Carlen, and Kim R. Pearson

filed their bill of complaint against Karl W. Lady, James G.

Aldige, III, and George P. McDonnell.  TSC was named as a

complainant in the bill of complaint.  Subsequently, the

chancellor entered an order realigning TSC as a respondent.

 Paul E. Bramell, chief executive officer of TSC, was

permitted to intervene as a respondent.

     The complainants sought a declaration that they are the

lawful directors of TSC and that respondents Lady, Aldige,

and McDonnell are unlawfully acting as TSC's directors and

officers.  The complainants also sought an injunction

restraining respondents Lady, Aldige, and McDonnell from

acting as directors or transacting any business on behalf of

TSC.

     The respondents asserted that Lady, Aldige, and

McDonnell are the lawful directors of TSC.  The chancellor

conducted an _ore tenus_ hearing and held, _inter alia_, that Lady, Aldige, and McDonnell are the lawful directors of TSC and entered a decree in their favor.  We awarded the complainants an appeal.

### III.

The chancellor made the following findings of fact relevant to this appeal.  In 1979, Daniel G. Alexander created a tax-exempt corporation named the Taxpayers Education Lobby, Inc.  Among other things, this corporation became an advocate for issues of concern to senior citizens.  Eventually, the Taxpayers Education Lobby created an internal division known as The Seniors Coalition.  This division published a newsletter and engaged in fund raising and lobbying activities.

In 1990, Alexander caused TSC to be incorporated as a separate legal entity.  Jake A. Hansen, an employee of Alexander, was the incorporator and sole director.  Hansen elected Stewart and Carlen to TSC's board of directors.

Alexander informed Stewart and Carlen that TSC would not commence operations immediately and that Alexander would advise them when they could begin to exercise their duties as directors.  Alexander continued to operate TSC as though it was a division of the Taxpayers Education Lobby. Stewart, Carlen, and Hansen did not exercise their duties as directors, and the chancellor specifically found that this board "never acted."

Subsequently, Lady, Aldige, and McDonnell, who were members of the board of directors of the Taxpayers Education

Lobby, convinced Alexander that they should serve as the directors of TSC. Alexander agreed and purportedly elected them as directors of TSC. Alexander also purportedly removed Stewart and Carlen from the TSC board and elected them to the board of the Taxpayers Education Lobby. Hansen resigned, by letter, from the board of TSC. The chancellor found that neither Stewart nor Carlen had resigned from the board of TSC and "indeed, Stewart and Carlen had no knowledge of the proposed changes."

In 1992, respondents Lady, Aldige, and McDonnell, acting as the board of directors of TSC, "began to operate . . . in earnest." These respondents "squeezed Alexander out of control" of TSC's operations and "built it into a corporation with significant assets and many activities."

Commenting upon Alexander's role in the Taxpayers Education Lobby and TSC, the chancellor found that even though

> Alexander had no formal position with either [Taxpayers Education Lobby] or TSC . . . . he ran the companies unimpeded until [the respondents] edged him out of control. There was no need for formal meetings or other corporate formalities; what Alexander said was the law. Alexander ran the corporations autocratically, rather than following established corporate procedures. After [the respondents] took control, [they were] treated in all respects, by Alexander and others, as if [they were] the lawfully constituted Board of Directors of TSC.

The chancellor also found that the complainants knew that TSC was operational and published a newsletter which complainants Stewart and Carlen had seen. Complainant Carlen had placed an advertisement in the August/September 1992 edition of TSC's newsletter. In May 1994, Stewart and

Carlen elected Pearson to TSC's board of directors.

IV.

A.

TSC was incorporated pursuant to the provisions of the Virginia Nonstock Corporation Act, Code §§ 13.1-801 through -980. The complainants contend that the Virginia Nonstock Corporation Act vests sole power to elect successor directors with the board of directors. Thus, the complainants say that an agent does not have the authority to elect successor directors. The respondents assert and the chancellor held that Alexander, acting as agent of complainants Stewart and Carlen, had broad express and implied authority to elect respondents Lady, Aldige, and McDonnell as directors of TSC. We disagree with respondents.

> Code § 13.1-803 defines the term "board of directors" of a nonstock corporation such as TSC as "the group of persons vested with the management of the business of the corporation irrespective of the name by which such group is designated," and "director" is defined as "a member of the board of directors." Code § 13.1-855(D) states in part, "[d]irectors shall be elected or appointed in the manner provided in the articles of incorporation." Code § 13.1-857(B), which governs terms of directors generally, states: The directors constituting the initial board of directors shall hold office until the

first annual election of directors or for such

other period as may be specified in the articles

of incorporation.  Thereafter, <u>directors shall be

elected</u> or appointed <u>in the manner</u> and for the

terms <u>provided in the articles of incorporation</u>.

(Emphasis added).

As previously mentioned, TSC's initial board of

directors filed articles of incorporation.  The relevant

provision in TSC's articles of incorporation, which governs

the election of directors, states:

> The <u>Directors</u> of the Corporation <u>shall hold
> office for a term of one (1) year, and until their
> respective successors have been elected and
> qualified</u>, and shall, with the exception of the
> initial Director, be elected by a majority vote of
> the Directors in office immediately preceding the
> expiration of each term.  Any vacancy in the Board
> of Directors that shall occur prior to the
> expiration of a term shall be filled by such
> person as shall be elected thereto by an
> affirmative vote of a majority of the then
> remaining members of the Board of Directors and
> the person so elected shall hold office until the
> expiration of the term to which he or she
> succeeded.

(Emphasis added).

Code § 13.1-855(D) mandates that TSC's directors be

elected in the manner provided in the articles of

incorporation.  As referenced above, TSC's articles of

incorporation specify that the directors shall hold office

for a term of one year <u>and</u> until their respective successors

have been elected and qualified.  Applying this clear and

unambiguous language, we hold that complainants Stewart and

Carlen are the lawful directors of TSC because they neither

resigned nor elected any successors as required by TSC's

articles of incorporation.

It is true, as respondents observe, that complainants Stewart and Carlen did not conduct annual meetings of the corporation or elect any other directors until they elected Pearson in 1994.  However, we have held that the

> "[f]ailure [of a corporation] to elect officers results in continuing the old officers in power. Thus, where the corporation fails to hold its regular annual meeting for the election of directors, the directors then in office hold over until their successors are elected."

Blue Ridge Property Owners v. Miller, 216 Va. 611, 613, 221 S.E.2d 163, 165 (1976) (quoting 2 William M. Fletcher, Cyclopedia of the Law of Private Corporations § 344 (Rev. Vol. 1969 & Cum. Supp. (1975)).

We reject the respondents' argument that Alexander, as agent for Stewart and Carlen, was cloaked with the express or implied authority to elect members to TSC's board of directors.  Code § 13.1-846(C) states:  "[i]f a corporation has no members or its members have no right to vote, the directors shall have the sole voting power."  Applying the clear and unambiguous language of this statute, we hold that Code § 13.1-846(C) does not grant an agent of the board of directors the power to elect a director.

B.

The respondents assert that even if the Virginia Nonstock Corporation Act prohibits an agent from electing a successor director, the chancellor's judgment should still be affirmed because "Carlen and Stewart acquiesced in Alexander's informal conduct of TSC's affairs, and cannot invoke that informality as a shield."  Relying principally

upon <u>Coastal Pharmaceutical Company</u> v. <u>Goldman</u>, 213 Va. 831, 836-37, 195 S.E.2d 848, 852-53 (1973), <u>Curley</u> v. <u>Dahlgren Chrysler-Plymouth Dodge, Inc.</u>, 245 Va. 429, 433-34, 429 S.E.2d 221, 224 (1993), and <u>Brewer</u> v. <u>First National Bank of Danville</u>, 202 Va. 807, 812-13, 120 S.E.2d 273, 278 (1961), the respondents argue that this Court has held that strict adherence to statutory or corporate formalities is not required to render binding the acts of a small, closely held corporation.  The respondents contend that Stewart and Carlen should not be permitted to "hide behind statutory requirements and corporate formalities to invalidate the election of the Current Board, because they chose not to follow corporate formalities and allowed Alexander to conduct TSC's affairs informally."

It is true, as respondents point out, that "we repeatedly have refused to invalidate acts of closely held corporations simply because certain corporate formalities were not observed."  <u>Curley</u>, 245 Va. at 433, 429 S.E.2d at 224.  But, as we have explained, this rule is designed to protect innocent third parties who deal in good faith with close corporations that conduct their internal affairs informally.  <u>Lake Motel, Inc.</u> v. <u>Lowery</u>, 224 Va. 553, 560, 299 S.E.2d 496, 500 (1983).  This rule has no application here because the respondents cannot be deemed innocent third parties in relation to a corporation which they directed and managed.

### C.

We find no merit in the respondents' argument that the

complainants are estopped from asserting they are the lawful

directors of TSC.  We have stated:

> To establish equitable estoppel, it is not
> necessary to show actual fraud, but only that the
> person to be estopped has misled another to his
> prejudice, Security Co. v. Juliano, Inc., 203 Va.
> 827, 834, 127 S.E.2d 348, 352 (1962), or that the
> innocent party acted in reliance upon the conduct
> or misstatement by the person to be estopped.
> Khoury v. Memorial Hospital, 203 Va. 236, 243, 123
> S.E.2d 533, 538 (1962).  Elements necessary to
> establish equitable estoppel, absent a showing of
> fraud and deception, are a representation,
> reliance, a change of position, and detriment.

T. . . . v. T. . . ., 216 Va. 867, 872-73, 224 S.E.2d 148, 152

(1976).

Here, there is no evidence that the complainants

committed any acts constituting fraud or deception.

Additionally, the respondents failed to show that they

relied upon any acts of the complainants or that they

changed their position in reliance upon any such acts.  It

is true, as the respondents observe, that Stewart and Carlen

were aware that TSC was conducting business and that they

waited before taking action to assert themselves as the

rightful directors.  However, these facts are not sufficient

to constitute a representation, which is a necessary element

of estoppel.

### D.

The respondents contend that "equity compels the result

reached by the [chancellor]."  The respondents, relying upon

Code § 13.1-861, say that the chancellor has power to review

elections of directors and, if warranted, grant equitable

relief.  Code § 13.1-861 states:

> Any member or director aggrieved by an
> election of directors may, after reasonable notice

to the corporation and each director whose election is contested, apply for relief to the circuit court in the county or city in which the principal office of the corporation is located, or if none in this Commonwealth, where its registered office is located.  The court shall proceed forthwith in a summary way to hear and decide the issues and thereupon to determine the persons elected or order a new election or grant such other relief as may be equitable.  Pending decision, the court may require the production of any information and may by order restrain any person from exercising the powers of a director if such relief is equitable.

The respondents' reliance upon Code § 13.1-861 is misplaced.  Here, there has been no contested election.  The complainants are the holdover directors and, as we have held, Alexander simply did not have the statutory authority to elect successor directors.

We also reject the respondents' argument that the chancellor, exercising his equitable jurisdiction, is empowered to declare the respondents the lawful directors.  Under the facts and circumstances of this case, the chancellor simply has no statutory authority to elect directors.

### E.

The respondents assert that the doctrine of laches bars the complainants' cause.  The respondents say that "the Former Board slept on their rights from 1990 until July 1994, in a context where such delay is prima facie unreasonable."  We disagree.

We have held that "no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances."  Puckett v. Jessee, 195 Va. 919, 930, 81 S.E.2d 425, 431 (1954).  We have defined laches

as "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." Princess Anne Hills v. Susan Constant Real Est., 243 Va. 53, 58, 413 S.E.2d 599, 602 (1992); Masterson v. Board of Zoning Appeals, 233 Va. 37, 47, 353 S.E.2d 727, 735 (1987). The burden of proving laches and prejudice is upon the litigant asserting that defense. Princess Anne Hills, 243 Va. at 58, 413 S.E.2d at 602. Even though a finding of laches rests primarily within the discretion of the chancellor, we will not approve such finding if the party asserting this defense fails to prove prejudice. Masterson, 233 Va. at 48, 353 S.E.2d at 735.

Respondents McDonnell and Aldige knew, or had reason to have known, since April 1992 that complainants Stewart and Carlen were the lawful members of the board and that they had not elected any successor directors. In April 1992, TSC filed its annual report with the State Corporation Commission, and that report identified Stewart, Carlen, and Hansen as the board of directors. In May 1992, TSC prepared an issues memorandum that identified Aldige, Jerry Tolson, McDonnell, Carlen, and Stewart as members of TSC's board of directors. The respondents filed a registration statement with the State of New York identifying the same individuals as members of the board of directors.

In November 1992, even though the respondents knew that Stewart and Carlen had not resigned, McDonnell drafted a memorandum stating in part:

> We need a set of minutes for the Board meeting in early January, 1992 that accepted Jake Hansen's resignation and named Jim Aldige, George McDonnell

and Jerry Tolson to the Board.

A draft of certain proposed minutes was attached to the memorandum which stated in part:

> On March 2, 1992, Jerry Tolson, George McDonnell and James Aldige met and declared that all members of the Board were present. They accepted the resignations of W.D. Stewart and Jim Carling [sic].

In November 1992, McDonnell wrote another memorandum questioning in part:

> What happens if they [Stewart and Carlen] won't [sign]? <u>Can we draft a statement that would cover that situation as was suggested before?</u>

We hold that even though the complainants could have asserted their claims earlier, their failure to do so did not prejudice the respondents because they had actual knowledge since 1992 that the complainants were the lawful directors of TSC.

V.

Accordingly, we will reverse the judgment of the trial court, and we will enter a declaration here declaring that the complainants, Warren D. Stewart, James G. Carlen, and Kim R. Pearson are the lawful directors of The Seniors Coalition, Inc. We will remand this proceeding to the trial court for the entry of any injunctive relief which may be necessary to effectuate this declaration.

<u>Reversed and remanded</u>.