C. Ray Davenport,
Commissioner of
Labor and Industry

v.

English Construction
Co., Inc.

October 4, 2004

Case No. CH02-62

BY JUDGE CLIFFORD R. WECKSTEIN

The Commissioner of Labor and Industry, who is responsible for enforcing the occupational safety and health provisions of Virginia law,[1] cited English Construction Company for workplace safety violations. A "citation" is "the notice to an employer that the commissioner has found a condition or conditions that violate Title 40.1 of the Code of Virginia or the standards, rules, or regulations established by the commissioner or the board." 16 VAC 25-16-10. English promptly contested those citations, but some thirty-four months passed before the Commissioner commenced this enforcement action. English contends that the action should be dismissed because the Commissioner waited too long to file. Alternatively, English asserts that, even if the filing was timely, the suit must be dismissed because the Commissioner did not immediately notify the local Commonwealth's Attorney that English contested the citations.

At English's request, and without objection, the court heard *ore tenus* testimony of witnesses, through whom exhibits were admitted in evidence. My

---

[1] Va. Code §§ 40.1-62, 40.1-22(5); 40.1-49.4; *See* Bill of Complaint, ¶ 1, admitted in Answer, ¶ 1.

findings of fact, which are contained in the body of this opinion letter, are based upon the evidence presented on September 8, 2004, and on the admissions in the pleadings. Judicial fact-finding is necessary, not only because I heard live testimony, but because the applicable legal test requires it. See Barr v. S. W. Rodgers, Co., 33 Va. App. 273, 532 S.E.2d 920 (2000); also see Davenport v. Thor, 62 Va. Cir. 237, 238 (Montgomery County 2003) (Turk, J.); Davenport v. Thor, 62 Va. Cir. 228, 230 (City of Martinsville 2003) (Stone, J.).

Upon consideration of all of the evidence, the argument of counsel, and the decided authorities, I disagree with English's contention that the action must be dismissed.

On March 2, 1999, one of the Commissioner's employees conducted a safety inspection at the job site where English was working on the Hunter Viaduct, a highway bridge in the City of Roanoke. As a result of this inspection, the Commissioner on March 19, 1999, cited English for three safety violations for which he proposed to impose civil penalties totaling $16,375. On April 7, 1999, English timely notified the Commissioner that it contested the allegations of violation and the financial penalties; the Commissioner notified the Commonwealth's Attorney of the contest on April 19, 1999.

From time to time thereafter, officials from the department met with representatives of English, led by English's safety director, in an effort to resolve the citations and penalties in a matter agreeable to both parties. Meanwhile, the safety director investigated the matter on English's behalf.

James H. Higginbotham, II, who has been employed by English as an in-house attorney for some twenty years, testified that he became involved in the case only after the Commissioner and English (then represented by the safety director) failed to reach agreement at an informal conference. Until then, he said, the safety director was in charge of investigating the validity of the citations and the facts surrounding their issuance. According to Higginbotham, the safety director was a thorough investigator; Higginbotham testified that he "would be surprised" if the safety manager had not interviewed everyone present at the job site who had relevant knowledge.

English terminated the safety director in approximately 2002. (The Commissioner's Bill of Complaint was filed on January 31, 2002. There is no suggestion in the evidence that the safety director was terminated before suit was filed, nor is there any suggestion of any relationship between the safety director's discharge and the March 1999 citations.) The relationship between the company and the safety director had become "strained," Higginbotham testified; when terminated, the safety director "purged" his paper and

computer-based files. With those files went most of English's institutional knowledge about the investigation and the citations. Higginbotham testified that, while the whereabouts of the safety director might be discovered, English could not anticipate assistance or cooperation from him. Higginbotham and Aubrey Crouch, who had been a foreman on the Hunter Viaduct job, testified to the relative impossibility of locating today witnesses who had been at the jobsite in March of 1999.

The testimony made it clear that English took these citations particularly seriously from the beginning because the Commissioner denominated one of the citations a "repeated" violation of Virginia occupational health and safety standards for the construction industry and the other two citations "serious" violations.[2] A finding that a company is a "repeated" violator could substantially hinder English's ability to bid on and receive significant contracts; findings of "serious" violations also could hurt English's chances of being chosen for future jobs.

Proceedings in cases of this sort are governed by Va. Code § 40.1-49.4. Under subsection (E) of that statute, when the Commissioner receives notice that a citation is contested, he "shall immediately notify the attorney for the Commonwealth for the jurisdiction wherein the violation is alleged to have occurred and shall file with the circuit court a bill of complaint." *Barr*, 34 Va. App. [50] at 57, 537 S.E.2d 620. The plain meaning of this statute, the Court of Appeals has explained, "dictates that the only immediate action required of the Commissioner is to notify the Commonwealth's Attorney."[3] "Code

---

[2] As defined in 16 VAC 25-16-10, " 'Repeated violation' means a violation deemed to exist in a place of employment that is substantially similar to a previous violation of a law, standard, or regulation that was the subject of a prior final order against the same employer. A repeated violation results from an inadvertent or accidental act. . . . 'Serious violation' means a violation deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation. The term 'substantial probability' does not refer to the likelihood that illness or injury will result from the violative condition but to the likelihood that, if illness or injury does occur, death or serious physical harm will be the result."

[3] *Id.* "The General Assembly did not repeat the word 'immediately' in the second portion of the sentence when referring to the filing of a bill of complaint. By virtue of the intervening 'shall,' the adverb 'immediately' does not distribute across the conjunction, 'and,' into the second part of the sentence." *Id.* "In addition, we note

80

40.1-49.4(E) does not impose upon the Commissioner the requirement that a bill of complaint be filed contemporaneously with the notification of the Commonwealth's Attorney." *Id.* at 58.

This does not mean, the Court explained in *Barr v. Rodgers*, that the Commissioner has an "*unlimited* amount of time" within which to file the bill of complaint. *Id.* (emphasis added). Rather, the Court held, if the Commissioner fails "to file a bill of complaint within a *reasonable* length of time," the enforcement action should be dismissed. *Id.* (emphasis added).

English bears the burden of proving that the thirty-four month delay in this case was "unreasonable." To meet that burden, it must prove, by "credible evidence that it was actually prejudiced by the length of the interval between the notice of contest and the filing of the bill of complaint." *Id.*, citing *Stewart v. Lady*, 251 Va. 106, 114, 465 S.E.2d 782 (1996).

English attempts to distinguish this case from *Barr*, where the filing delay was fifteen months, noting that, in *Barr*, the Court, while recognizing that generally "no statute of limitations applies to the Commonwealth," observed that fifteen months "is well within the statute of limitations for the filing of a civil action," *Barr*, 34 Va. App. at 58, and that there was "therefore . . . no inherent prejudice" in the delay. *Barr*, 34 Va, App. at 58. (English suggests, and I agree, that the statute of limitations to which the Court referred was Va. Code § 8.01-248.[4]) English argues that this *dictum* suggests that the trial court should infer "inherent prejudice" when the Commissioner does not file within the time prescribed by an analogous statute of limitations.

The question, however, is not whether "inherent prejudice" exists, nor whether a statute of limitations would have barred a private litigant's action at law. There is no ambiguity in the Court's holding in *Barr*, the governing and only applicable Virginia appellate case. The employer, in this case, English, bears the burden of proving actual prejudice.

(In reaching its holding, the *Barr* Court cited a case that had been decided on the equitable principle of laches,[5] "neglect or failure to assert a known right or claim for an unexplained period of time under circumstances

---

that, if the General Assembly had intended to impose a narrow time limit, it could have done so as it did in other sections of the statute." *Id.*

[4] "Every personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued."

[5] *Barr*, 34 Va. App. at 58, citing *Stewart v. Lady*, 251 Va. 106, 114, 465 S.E.2d 782 (1996).

prejudicial to the adverse party,"[6] and English has pleaded laches as a defense to this enforcement action. Laches is not, however, the rationale (the *"ratio decidendi"*) for the *Barr* decision, nor can it be, for "the doctrine of laches may not be set up as a defense against the Commonwealth."[7])

English has not carried its burden of proving that the length of the interval between the notice of contest and the filing of the bill of complaint actually prejudiced it in its investigation and defense of the case. Its own evidence shows that it viewed these citations with utmost concern from the beginning and that it conducted a thorough and immediate investigation, an investigation that probably included interviews with every witness who had useful knowledge. The passage of time between the notice of contest and the commencement of this action neither caused, nor contributed to causing, the safety director's discharge, or the safety director's decision to destroy his records. *Also see Motley v. Virginia State Bar*, 260 Va. 251, 257-58, 536 S.E.2d 101 (2000), and cases cited therein.

Finally, English argued in its pleadings, although not orally, that a twelve-day gap between the day it filed its challenge to the citations and the day that the Commissioner notified the local Commonwealth's Attorney of that challenge violated the Commissioner's duty to "immediately notify the attorney for the Commonwealth" when he receives notice that a citation is contested. Va. Code § 40-49.4(E).

"Immediately," our Supreme Court has held, "is not a word of very precise signification. It does not necessarily import the exclusion of all intervals of time or space. Its meaning is determined by the context in which it is used and the purpose for which the statutes were enacted." *Umberger v. Koop*, 194 Va. 123, 130, 72 S.E.2d 370 (1952). "While *immediate* does not mean instantaneous, it does here call for [action] with reasonable dispatch." *Yanago v. Aetna Life Ins. Co.*, 164 Va. 258, 265, 178 S.E. 904 (1935). *See Kennard v. Travelers' Protective Ass'n*, 157 Va. 153, 160, 160 S.E. 38 (1931).

---

[6] *Stewart v. Lady, id.* (quoting *Princess Anne Hills v. Susan Constant Real Est.*, 243 Va. 53, 58, 413 S.E.2d 599, 602 (1992)).

[7] *Sink v. Commonwealth*, 13 Va. App. 544, 547, 413 S.E.2d 658 (1992) (citing *In re Department of Corrections*, 222 Va. 454, 465, 281 S.E.2d 857 (1981); *Kansas v. Colorado*, 514 U.S. 673, 687, 131 L. Ed. 2d 759, 115 S. Ct. 1733 (1995) ("The common law has long accepted the principle *nullum tempus occurrit regi*" — neither laches nor statutes of limitations will bar the sovereign."); *Kansas v. Colorado*, 514 U.S. 673, 687, 131 L. Ed. 2d 759, 115 S. Ct. 1733 (1995).

"Because Code § 40.1-49.4 is a remedial statute, it should be 'construed liberally so as to suppress the mischief and advance the remedy,' as the legislature intended." *Barr*, 34 Va. App. at 58 (quoting *Board of Supervisors v. King Land Corp.*, 238 Va. 97, 103, 380 S.E.2d 895 (1989)). In this context, and considering the remedial purpose for which this statute was enacted, the meaning of "immediately" is functionally equivalent to "forthwith" – "requiring reasonable promptness without unnecessary delay." *Potter v. Commonwealth*, 10 Va. App. 113, 115, 390 S.E.2d 196 (1990) (quoting *Bouldin v. Commonwealth*, 4 Va. App. 166, 171, 355 S.E.2d 352 (1987) (brackets omitted from quotation). I conclude that the Commissioner carried out his burden of immediately notifying the Commonwealth's Attorney. I also conclude, based upon the teachings of the Supreme Court of Virginia, that a breach of the duty to "immediately" notify the Commonwealth's Attorney would not lead to dismissal of the action unless English could prove that it was prejudiced by that breach. *Motley v. Virginia State Bar*, 260 Va. at 257-58; *Potter v. Commonwealth*, 10 Va. App. at 115. No such prejudice has been shown by the evidence.

English initially demurred to the bill of complaint on the basis that it was not timely filed. In amended responsive pleadings, English filed a "Special Plea of Laches and/or Unreasonable Delay Under the Applicable Statute." For the foregoing reasons, the court overrules the demurrer and denies the special plea.