# COURT OF APPEALS OF VIRGINIA

## Record No. 0780-25-2

DOROTHY FULKS
v.
JOHN D. FULKS, ET AL.

Present: Judges Athey, Raphael and Senior Judge Petty
Argued by videoconference

Opinion Issued May 19, 2026

## FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

J. Tyler Mayhew (Bowles Rice LLP, on briefs), for appellant.

Colin D. Neal (Dennis J. Quinn; Andrew K. Clark; Eliza J. Unrein; William D. Bayliss; Joseph E. Blackburn; Carr Maloney, P.C.; Hirschler Fleischer, P.C.; Williams Mullen, on brief), for appellees.

## PUBLISHED OPINION BY
## JUDGE STUART A. RAPHAEL

Virginia adopted the Uniform Trust Code in 2005, joining the majority of States that have implemented it. 2005 Va. Acts ch. 935 (codified as amended at Code §§ 64.2-700 to -808); *see generally Galiotos v. Galiotos*, 83 Va. App. 206, 231 n.7 (2024). The Code provides a two-track statute of limitations for claims by a trust beneficiary "against a trustee for breach of trust." Code § 64.2-796 (UTC § 1005). If the beneficiary was provided "a report that adequately disclosed the existence of a potential claim for breach of trust and informed the beneficiary of the time allowed for commencing a proceeding," the limitations period is one year after the beneficiary was sent the report. Code § 64.2-796(A). Otherwise, the limitations period is "five years after the first to occur of: [1] The removal, resignation, or death of the trustee; [2] The

termination of the beneficiary's interest in the trust; or [3] The termination of the trust." Code § 64.2-796(C).

Rather than apply that statute of limitations, the trial court here dismissed the plaintiff's breach-of-trust claims as time-barred under Code § 8.01-248—the catch-all limitations period for personal actions for which "no limitation is otherwise prescribed." The court reasoned that the plaintiff had brought "common law" claims for breach of trust, rather than "statutory" claims under the Virginia Uniform Trust Code. The court noted that even if the one-year limitations period in Code § 64.2-796(A) applied, the time to sue had expired a year after a previous trustee in 2009 had disclosed potential breaches by his predecessors. The court also held that the plaintiff's claims were barred by laches because she and her deceased husband (her predecessor-in-interest) had waited too long to sue.

The trial court erred in its statute-of-limitations and laches analysis. Because the Virginia Uniform Trust Code provides an express statute of limitations for breach-of-trust claims against trustees, the trial court erred in applying the catch-all limitations period in Code § 8.01-248. Since the trust here did not terminate until 2019, and the plaintiff sued the trustees (and an alleged quasi-trustee) less than five years later, the suit was timely under the five-year provision in Code § 64.2-796(C)(3). The one-year period in subsection A did not apply because the former trustee's 2009 disclosure did not "inform[] the beneficiary of the time allowed for commencing a proceeding." Code § 64.2-796(A). The trial court thus erred in finding the claim to be time-barred. It further erred in finding the plaintiff's claim barred by laches. We therefore reverse the judgment and remand this case for further proceedings consistent with this opinion.[1]

---

[1] Although the parties originally waived oral argument, we determined that oral argument would assist the Court in resolving the questions presented. We thank counsel for their presentations and for responding to the Court's questions.

- 2 -

Because no evidence was considered on the defendants' pleas in bar, we take the facts alleged in Dorothy Fulks's complaint as true. *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). We likewise "grant the plaintiff the benefit of all 'reasonable factual inferences that can be drawn' from such a view of the facts." *Montalla, LLC v. Commonwealth*, 303 Va. 150, 164 (2024) (quoting *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 895 (2023)).[2] Viewed through that lens, the facts are as follows.

When McKendree G. Fulks died in August 1998, his will provided for the creation of a Qualified Terminable Interest Property trust ("QTIP Trust"). Mildred Fulks—McKendree's wife—was the lifetime beneficiary of the QTIP Trust. The remainder beneficiaries were the Fulks's four children: Charles B. Fulks, John D. Fulks, McKendree R. Fulks, and Linda F. Moore. McKendree's will named Claude R. Vess and Robert B. Easterling as the co-personal representatives of the estate and co-trustees of the QTIP Trust. Compl. ¶¶ 8-11.

In December 2008, Vess and Easterling resigned, and Lewis R. Schumann was appointed the successor trustee. Shortly into Schumann's tenure, John notified Schumann that Mildred wanted to move the trust's administration from Maryland to Virginia. He also informed Schumann that Easterling and N. Pendleton Rogers would take over as co-trustees.

On October 7, 2009, Schumann filed a "Petition for Resignation of Trustee and Approval of Accounting and Fees" in the Circuit Court of Montgomery County, Maryland. Schumann alleged in that petition that Vess and Easterling had commingled trust funds with the family's partnership funds and had made several loans from the trust to members of the Fulks family. The petition also disclosed that certain family members who were indebted to the trust had failed

---

[2] Defendant John Fulks attached more than 100 pages of documents to his memorandum in the trial court in support of his motion craving oyer. Because the trial court did not grant that motion, we do not consider those records.

to repay the principal and interest. An accounting attached to Schumann's petition showed that between January 7 and September 30, 2009, the QTIP Trust had "assets on hand" amounting to $3,041,450.43.

Easterling and Rogers were appointed as successor co-trustees of the QTIP Trust and served from October 2009 until Mildred's death in July 2019. The QTIP Trust terminated upon Mildred's death and provided for the Fulks's four children to receive an equal share of the assets. Charles—the husband of Dorothy Fulks—died on January 26, 2021, leaving his estate to Dorothy; Dorothy was designated the executor.

On March 23, 2023, Rogers provided Dorothy with documents that revealed a series of $20,000 payments in 2019 from the QTIP Trust to John for "medical care" for Mildred. The documents further revealed that "the Trustees [had] disbursed cash in the amount of $704,277.99" to "the Estate of Mildred Fulks." That amount was reportedly "the remaining balance of the QTIP trust."

On April 1, 2023, Dorothy demanded that the trustees return the $704,277.99 to the QTIP Trust, asserting that Mildred's estate was not a beneficiary. She repeated the same demand on April 4 and further requested "a full and complete accounting for all years" that Rogers and Easterling had served as trustees. For Easterling, that meant "all books and records relating to the QTIP Trust's assets and all documents relating to any transactions involving the QTIP Trust from approximately August of 1998 to January of 2009 and from approximately October of 2009 to present." Dorothy also sought documentation of the trustees' efforts to recover the loans detailed in Schumann's 2009 accounting.

The trustees refused Dorothy's demands. At the trustees' direction, John disbursed on April 10, 2023, what the trustees asserted was Charles's share of the QTIP Trust ($176,069.99)

by check to Dorothy's representative. On April 18, Dorothy repeated her demand for an accounting. She received no response.

Dorothy sued John, Rogers, and Easterling on March 18, 2024, alleging breach of trust.[3] Dorothy sued Rogers and Easterling in both their individual and trustee capacities; she sued John in his individual capacity. Dorothy alleged that Easterling and Rogers had represented John and the Fulks family for many years and had "actively taken steps to secrete the assets of the QTIP Trust in breach of their fiduciary duties." Compl. ¶¶ 40-42. Dorothy also complained that Rogers and Easterling had "allowed John . . . to act in many ways in their stead as Trustees of the QTIP Trust." Compl. ¶ 43. She claimed that John "knowingly and intentionally used his position of influence over the Trustees by virtue of a long-standing and continuing attorney-client relationship between them, to enrich himself and others at the expense of the QTIP Trust." Compl. ¶ 44. Further, Rogers and Easterling breached their duties as trustees by failing to properly administer the trust, failing to protect the interests of the remainder beneficiaries, and failing to respond to her reasonable requests for information. Compl. ¶¶ 45-48.

Dorothy sought various forms of relief, including an accounting from Rogers and Easterling. She also sought compensatory damages of $250,000, punitive damages of $350,000, and attorney fees under the "Uniform Trust Code."

Rogers, Easterling, and John filed demurrers and motions craving oyer. They also filed pleas in bar based on the statute of limitations and laches. At a hearing on March 19, 2025, at which no evidence was taken, the trial court granted the pleas in bar, finding that Dorothy's claims were barred both by the two-year limitations period in Code § 8.01-248 and by laches.

---

[3] The complaint named John's remaining siblings—McKendree R. Fulks and Moore—as "notice defendants."

The court reasoned that Dorothy's complaint sought punitive and compensatory damages, remedies that the court believed were available only under Virginia common law, not under the Virginia Uniform Trust Code. In the alternative, the court said that even if the Virginia Uniform Trust Code applied, Dorothy's claim was time-barred under Code § 64.2-796(A) because more than one year had elapsed from when Schumann's 2009 petition disclosed malfeasance by the prior trustees (Vess and Easterling). The court also ruled that Dorothy's claims were barred by laches "due to [Dorothy's] and . . . Charles['s] . . . unreasonably delaying in initiating this action, prejudicing Defendants."

Because the court dismissed the case on the defendants' pleas in bar, the court did not address their demurrers or motions craving oyer, deeming them "moot." Finally, the court denied Dorothy's motion for leave to file an amended complaint. The court reasoned that any amendment would be futile because the claims were time-barred. Dorothy noted a timely appeal.

ANALYSIS

Dorothy challenges the trial court's rulings that the statute of limitations and laches bar her breach-of-trust claims. She also contests the trial court's refusal to let her amend her complaint. We address those arguments in turn.

A. *The trial court applied the wrong statute of limitations (Assignment of Error 1).*

An "[a]ppeal of a decision on a plea in bar of the statute of limitations involves a question of law that we review de novo." *Van Dam v. Gay*, 280 Va. 457, 460 (2010). When "no evidence was presented on the plea in bar, we are limited to the facts set forth in the complaint[,] and [a] defendant has the burden of proof on the issue that the limitation period had run when the complaint was filed." *Id.*; *cf. Stevens v. Jurnigan*, ___ Va. ___, ___ (Apr. 9, 2026) ("In cases where the operative facts are contested, the parties may present evidence supporting or opposing a plea in bar.").

- 6 -

*1. The statute of limitations in Code § 64.2-796 governs the breach-of-trust claims here, not the catch-all provision in Code § 8.01-248.*

The Virginia Uniform Trust Code establishes a two-track limitations period for claims by a trust beneficiary "against a trustee for breach of trust." Code § 64.2-796. Subsection A of Code § 64.2-796 provides a *one-year* limitations period if the trustee discloses to the beneficiary (or his representative) the "potential claim for breach of trust" and "the time allowed" to bring suit. Otherwise, under subsection C, a *five-year* limitations period commences on the earlier of (1) "[t]he removal, resignation, or death of the trustee," (2) "[t]he "termination of the beneficiary's interest in the trust," or (3) "[t]he termination of the trust." Subsections A through C mirror the language of § 1005 of the Uniform Trust Code (https://perma.cc/Z7XS-JJTJ), prepared by the Uniform Laws Commission. *See Galiotos*, 83 Va. App. at 231 n.7. Taken together, these provisions create an express "statute of limitations on actions against a trustee," UTC Art. 10 gen. cmt.; they determine "when the clock will start to run for purposes of the statute of limitations," UTC § 1005 cmt.[4]

Because Code § 64.2-796 (UTC § 1005) defines the limitations period for breach-of-trust claims, the catch-all, two-year limitations period in Code § 8.01-248 for personal actions "for which no limitation is otherwise prescribed" is inapplicable. *See Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 219 n.6 (2014) (finding that the "plain language" of "'for which no limitation is otherwise prescribed'" negated the applicability of Code § 8.01-248 when another statute of limitations applied).

---

[4] "The official comments to the Uniform Trust Code were approved by the Uniform Laws Commission and 'are inordinately helpful in understanding the UTC.'" *Galiotos*, 83 Va. App. at 242 n.11 (quoting John E. Donaldson & Robert T. Danforth, *The Virginia Uniform Trust Code*, 40 U. Rich. L. Rev. 325, 332 (2005)). The comments themselves provide that "[t]he statutory text of the Uniform Trust Code is . . . supplemented by these Comments, which, like the Comments to any Uniform Act, may be relied on as a guide for interpretation." UTC § 106 cmt.

The trial court resisted that conclusion. It ruled that the catch-all provision controls because Dorothy brought "common law" claims, not "statutory" claims under the Virginia Uniform Trust Code.[5] The trial court reasoned that Dorothy sought "compensatory" and "punitive damages," remedies under the "common law" that the court did not think were available under the statute. The court insisted that a plaintiff must choose either a common-law approach or a statutory approach and "cannot mix the two together." The defendants repeat that reasoning here, calling common-law and statutory breach-of-trust claims "mutually exclusive."

We disagree. By its terms, the limitations period set forth in Code § 64.2-796 applies to "a proceeding against a trustee for breach of trust." It leaves no room for a different limitations period to apply depending on the remedy sought for breach of trust. Likewise, nothing in Code § 64.2-796 suggests that the applicable statute of limitations turns on whether the remedy for breach of trust is available under the statute or the common law.[6]

The trial court also erred in assuming that the "common law" of trusts and the Virginia Uniform Trust Code establish distinct legal systems. To the contrary, the statute and the common law go hand in hand. Before Virginia adopted the Uniform Trust Code, "the law of trusts in Virginia [was] . . . set forth in fragmentary statutory schemes and in scattered case law

---

[5] We assume without deciding that the catch-all, two-year limitations provision in Code § 8.01-248 would apply to a breach-of-fiduciary-duty claim if it were not subject to an express limitations provision. *Compare AV Auto., LLC v. Bavely*, 85 Va. App. 559, 582 n.9 (2025) (noting that "[o]ur appellate courts have not yet answered that question in a precedential opinion"), *with Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 467 & n.4 (2003) (assuming that a breach-of-fiduciary-duty claim in 1974 would have been governed by the then-five-year limitations provision in Code § 8-24, the statutory predecessor of Code § 8.01-248).

[6] The defendants misstate the record in claiming that Dorothy at the hearing below "concede[d] that her claim is not a statutory breach of trust claim." Appellees Br. 16-17. We read her counsel's exchange with the trial judge as an effort to explain that a breach-of-trust claim is not a separate "statutory" claim under the Virginia Uniform Trust Code. Dorothy's lawyer explained—correctly—that "I don't have to categorize whether that arises by statute or by common law; it is simply the relief that's being sought."

spread among reported decisions going back centuries." *Galiotos*, 83 Va. App. at 231 n.7

(quoting John E. Donaldson & Robert T. Danforth, *The Virginia Uniform Trust Code*, 40

U. Rich. L. Rev. 325, 327 (2005) ["Donaldson"]). The Virginia Uniform Trust Code was

intended to set "forth the law of trusts in a single source, conveniently accessible to lawyers,

fiduciaries, and others having the need to understand the law in this area." *Id.* (quoting

Donaldson, *supra*, at 327). It is not a separate legal system from the common law. Rather, it

"codifies those portions of the law of express trusts that are most amenable to codification."

UTC § 106 cmt. "The common law of trusts and principles of equity supplement [the Virginia

Uniform Trust Code], except to the extent modified by [it] or another statute of the

Commonwealth." Code § 64.2-704 (UTC § 106). The Code "does not displace preexisting

Virginia law governing trusts unless expressly modified." *Galiotos*, 83 Va. App. at 231 n.7

(citing Code § 64.2-704 and *Crosby v. ALG Tr., LLC*, 296 Va. 561, 576 n.2 (2018)).

In short, the trial court erred in ruling that a "common law" breach-of-trust claim lay

outside the scope of Code § 64.2-796 because that interpretation is at odds with the statute's

express terms. If the claim is brought by a trust beneficiary "against a trustee for breach of

trust," it is subject to the express statute of limitations in Code § 64.2-796, not the catch-all

provision in Code § 8.01-248.

The trial court also erred in assuming that Dorothy's request for compensatory and

punitive damages showed that she was not suing under the Virginia Uniform Trust Code. In fact,

money damages are specifically authorized by Code § 64.2-793 (UTC § 1002):

> A trustee who commits a breach of trust is liable to the
> beneficiaries affected for the greater of:
>
> 1. The amount required to restore the value of the trust property
> and trust distributions to what they would have been had the
> breach not occurred; or
>
> 2. The profit the trustee made by reason of the breach.

- 9 -

Code § 64.2-793(A). As the drafters pointed out, this section "provides how money damages for breach of trust are to be determined." UTC Art. 10 gen. cmt.

This case does not require that we characterize whether such money damages are always equitable in nature, cognizable only in equity. *See generally Kositzka, Wicks & Co. v. Fick*, No. 1653-23-4, slip op. at 16 n.10, 2025 Va. App. LEXIS 34, at *22 n.10 (Jan. 21, 2025) ("[W]hile money damages are traditionally a legal remedy, they are also available as an equitable remedy in the context of breaches of trust.");[7] Restatement (Third) of Trusts § 100 cmt. a(2) at 63 (Am. L. Inst. 2012) ("If suit for breach of trust is successfully brought against the trustee, recovery may take the form of a money judgment or (if feasible) specific restitution."). It is enough that the trial court erred by concluding that Dorothy's request for money damages meant that she could not seek such relief under the Virginia Uniform Trust Code.

The defendants also insist that the punitive damages Dorothy requested are not available under the Virginia Uniform Trust Code. Appellees Br. 19-20. True, the drafters of the uniform law acknowledged that traditional remedies for breach of trust historically had been "equitable, and as such, punitive damages were not available." UTC § 1001 cmt. But the drafters also cautioned that the model code "does not preclude the possibility that a particular enacting jurisdiction might not follow [such] norms." *Id.* The code calls for "broad and flexible" remedies for breach of trust, *id.*, including "any other appropriate relief," Code § 64.2-792(B)(10) (UTC § 1001(B)(10)). And Dorothy points out that our Supreme Court approved a punitive-damages award in a breach-of-fiduciary-duty case decided before Virginia adopted the Uniform Trust Code. *See Flippo v. CSC Assocs. III, LLC*, 262 Va. 48, 60 (2001).

---

[7] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).

We need not decide whether Virginia law permits the recovery of punitive damages for a breach-of-trust claim. It is enough that the trial court erred in concluding that, by requesting punitive damages, Dorothy converted her breach-of-trust claim into a common-law claim that was not subject to the express statute of limitations in Code § 64.2-796. The parties are free on remand to address whether Virginia law allows punitive damages for breach of trust.

2. *The five-year limitations period in Code § 64.2-796(C) governs this case.*

The trial court ruled in the alternative that even if Code § 64.2-796 were the correct statute of limitations, Dorothy's claim was barred because subsection A of that statute required that Charles (her predecessor-in-interest) sue the trustees no later than one year after Schumann's 2009 disclosure that his predecessors (Vess and Easterling) had breached their duties. Subsection A prevents a beneficiary from suing for breach of "trust more than one year after the date the beneficiary or a representative of the beneficiary was sent a report that [1] adequately disclosed the existence of a potential claim for breach of trust *and* [2] informed the beneficiary of the time allowed for commencing a proceeding." Code § 64.2-796(A) (emphasis and numbering added). When a statute uses the conjunctive *and* this way, it makes clear that both things are required. *Varga v. Commonwealth*, 260 Va. 547, 551-52 (2000).

We assume for argument's sake that Schumann's 2009 filing "adequately disclosed the existence of a potential claim for breach of trust." Code § 64.2-796(A). We further assume that Schumann served a copy of his report on Charles, Dorothy's predecessor-in-interest—an allegation outside the four corners of Dorothy's complaint.[8]

---

[8] Although John attached a copy of Schumann's 2009 petition to the memorandum in support of his motion craving oyer, the trial court did not grant that motion, finding it mooted by the court's decision to grant the plea in bar. So Schumann's 2009 petition was not properly before the court on the plea in bar. *See* note 2 *supra*.

Even so, the trial court overlooked the second prerequisite for the limitations period to commence: the trustee's report had to disclose "the time allowed for commencing a proceeding." Code § 64.2-796(A). Because the defendants failed to show that Schumann provided that disclosure, the one-year limitations period does not apply.

Falling back, the defendants argue that "[e]ven if the Schumann petition . . . did not explicitly disclose the time period to bring suit under Virginia law, the five-year statute of limitations contained in . . . Code § 64.2-796(C)(1)" applied. Appellees Br. 28 n.9. They say that the five-year period commenced "either in 2008 when Messrs. Vess and Easterling resigned as Trustees or in October 2009 when Mr. Schumann resigned." *Id.*

The defendants are partially correct. A trustee's resignation triggers the five-year limitations period under subsection C for a beneficiary to sue *that particular trustee* for any breach of trust committed before the resignation:

> While the five-year limitations period will normally begin to run on termination of the trust, it can also begin earlier. If a trustee leaves office prior to the termination of the trust, the limitations period for actions *against that particular trustee* begins to run on the date the trustee leaves office.

UTC § 1005 cmt. (emphasis added). So any breach-of-trust claims against Vess and Easterling—based on their conduct *before* their 2008 resignations—were barred when not filed within five years of those resignations.[9]

But Easterling resumed his co-trustee role in 2009, joined for the first time by Rogers. While Easterling's earlier resignation started the five-year clock for any claims based on his past misdeeds, it did not immunize him to breach his fiduciary duties going forward. Under the plain language of Code § 64.2-796(C)(3), the five-year limitations period for breach-of-trust claims

---

[9] Likewise, any breach-of-trust claim available against Schumann became barred five years after Schumann's 2009 resignation.

- 12 -

against Easterling and Rogers commenced upon "[t]he termination of the trust" in July 2019, when Mildred died. Thus, Dorothy's March 2024 breach-of-trust suit was timely filed and was not barred by the five-year statute of limitations.

John is differently situated from Easterling and Rogers, but taking the facts of the complaint as true, he too failed to show that the claims against him are time-barred. The defendants insist that John "was never appointed or designated a trustee and/or quasi-trustee of the QTIP Trust." Appellees Br. 3. But the defendants again fail to take the facts in the complaint in the light most favorable to Dorothy. Dorothy alleged that Rogers and Easterling allowed John to act in their place as trustees, making John a "quasi-trustee" or "delegatee" or "agent of the trustees." Compl. ¶¶ 43, 49. John then allegedly used his delegated powers as their agent "to enrich himself" at the trust's expense. Compl. ¶ 44. We assume without deciding that such a trust claim against a trustee's agent is viable. *See generally* Code § 64.2-769(B) (UTC § 807) ("In performing a delegated function, an agent owes a duty to the trust to exercise reasonable care to comply with the terms of the delegation.").[10] Whether Dorothy can ultimately succeed on that theory is a different question from whether the claim is time-barred. Since Dorothy sued John within five years of the trust's dissolution, we hold that Dorothy's claim against John was timely under Code § 64.2-796(C).

  *B. Dorothy's breach-of-trust claim is not barred by laches (Assignment of Error 2).*

We also agree with Dorothy that the trial court erred in finding her breach-of-trust claims barred by laches based on Dorothy and Charles's delay in filing suit.

---

[10] John's demurrer argued that Dorothy's complaint failed to show that he was a quasi-trustee, delegate, or agent of the trustees. He also argued that Virginia law does not recognize a "quasi trustee." But those arguments are not before us because the trial court did not adjudicate John's demurrer, deeming it moot in light of the court's statute-of-limitations and laches rulings.

"Laches is a defense against equitable claims where the plaintiff fails 'to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party.'" *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 18 (2019) (quoting *Stewart v. Lady*, 251 Va. 106, 114 (1996)). The party asserting laches has the burden to prove it. *Id.* "This defense is only permitted to defeat an acknowledged right on the ground that laches affords evidence that the right has been abandoned." *Id.* "[N]o rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances." *Stewart*, 251 Va. at 114 (quoting *Puckett v. Jessee*, 195 Va. 919, 930 (1954)). Still, despite that "a finding of laches rests primarily within the discretion of the chancellor, we will not approve such finding if the party asserting this defense fails to prove prejudice." *Id.*

Both sides rely on the equitable maxim that when considering the statute of limitations, "equity follows the law." *May*, 297 Va. at 19 (quoting *Belcher v. Kirkwood*, 238 Va. 430, 433 (1989)). As we have found that Dorothy's claims are not barred by the statute of limitations, the maxim does not help the defendants. For her part, however, Dorothy asks us to go further. She insists that because her breach-of-trust claims are not barred by the statute of limitations, they *cannot* be defeated by laches either. That is not quite right.

The official comment to UTC § 1005, the model for Code § 64.2-796, explains that "[t]he one-year and five-year limitations periods under this section are not the only means for barring an action by a beneficiary. . . . Claims may also be barred by principles such as estoppel and laches arising in equity under the common law of trusts." UTC § 1005 cmt. Still, the official comment does not make clear *when* the time should commence for assessing laches. Could it begin *before* the trust terminates? The defendants argue that it does. They say that Charles should have brought suit in 2009, when Schumann's petition disclosed the prior trustees' misconduct.

Since the uniform code does not answer that question, we look to Virginia common law. *See* Code § 64.2-704 (UTC § 106) ("The common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of the Commonwealth."); UTC § 106 cmt. ("To determine the common law and principles of equity in a particular state, a court should look first to prior case law in the state and then to more general sources, such as the Restatement of Trusts, Restatement (Third) of Property: Wills and Other Donative Transfers, and the Restatement of Restitution.").

Virginia common law is clear that "in the absence of his denial or repudiation of the trust, which must be communicated to the beneficiary, a fiduciary cannot assert the bar of the statute of limitations or laches against the trust beneficiary." *Wiglesworth v. Taylor*, 239 Va. 603, 608 (1990) (collecting cases).[11] This rule "applie[d] to all acting trustees, whether regularly appointed or not." *Lamar v. Hale*, 79 Va. 147, 164 (1884) (quoting 2 Jairus Ware Perry et al., *Treatise on the Law of Trusts and Trustees* § 863, at 511 (3d ed. 1882)). The reason is that "the possession of [trust assets by] the trustee is treated as the possession of the *cestui que trust*, and although [the trustee] does not execute the trust, his mere possession and inactivity as to the trust, of themselves, afford no indicia of an adverse claim by him." *Russell v. Passmore*, 127 Va. 475, 511 (1920) (quoting H.G. Wood, *Treatise on the Limitation of Actions at Law and in Equity*

---

[11] *See also Broaddus v. Gresham*, 181 Va. 725, 734 (1943) ("It is well settled that so long as there has been no denial or repudiation of an express and continuing trust, such as we have here, neither the statute of limitations nor laches will constitute a bar to an account or other proper relief to which the *cestui que trust* is entitled."); *Hammond v. Ridley*, 116 Va. 393, 399 (1914) (same); *Bargamin v. Clarke*, 20 Gratt. (61 Va.) 544, 553-54 (1871) ("As long as the relation of trustee and cestuis que trust is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar to an account or other proper relief for the cestuis que trust." (quoting 2 Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* § 1520(a), at 736 (9th ed. 1866)); 2 John B. Minor, *Institutes of Common and Statute Law* 582 (3d ed. 1882) ("As between *cestui que trust* and trustee (if the trust be constituted by the act of the parties), the possession of the trustee *can never be adverse* to the *cestui que trust,* and therefore *no length of possession* can bar the latter's title.").

§ 200, at 433 (1883)).  Upon that rationale, accountings in chancery have "been decreed against trustees . . . extending over periods of thirty, forty, and even fifty years."  Perry, *supra*, § 863 at 509-10.  Thus, if Mildred, during her time as life-tenant, had sued the trustees for breach of trust, the trustees could not have "assert[ed] the bar of the statute of limitations or laches against" her. *Wiglesworth*, 239 Va. at 608.

Were the remainder trustees—Charles, in particular—differently situated?  Could Charles's delay in suing the trustees after 2009 amount to laches?  Here again, Virginia common law answers no.

To be sure, Charles *could* have sued the trustees for breach-of-trust during Mildred's lifetime.  "[A] vested remainderman has the right to an accounting from the trustee, even though the terms of the trust do not provide for such an accounting."  *Shriners Hosps. for Crippled Children v. Smith*, 238 Va. 708, 711 (1989).  Remainder beneficiaries before the death of the life-tenant may also sue the trustee in equity to prevent or remedy a trust violation and preserve the trust assets.  *Stewart v. Conrad*, 100 Va. 128, 135 (1902).

But *Stewart* held that a remainderman's *failure* to sue the trustees before the death of the life-tenant is not laches:

> Neither are the [remaindermen] appellants barred by *laches*, lapse of time, or acquiescence.  The remaindermen, under the terms of the will creating the trust fund, are not entitled to the possession of any part of it until the death of the life-tenant, who . . . is still living.  Until her death the appellants would have no standing in court except to ask a court of equity to prevent or remedy a violation of the trust, and to preserve the trust fund.  They had the right to invoke the aid of a court of equity for those purposes, *but they were under no legal obligation to do so, and the objection of laches or acquiescence will not lie for their failure to assert rights which have not yet accrued*.

*Id.* at 135 (second emphasis added).  *See also Hope v. Norfolk & W. R.R. Co.*, 79 Va. 283, 289 (1884) ("[T]he plea of the statute of limitations cannot be sustained.  The life-tenant died in

1881.  It was not until then that the plaintiff's right of possession accrued, and the suit was [timely] brought . . . thereafter.").

Accordingly, Dorothy's breach-of-trust claims are not barred by laches.  The relevant period for considering laches began upon Mildred's death in 2019, when the trust terminated and the remainder beneficiaries became entitled to what was left.  If Charles and then Dorothy had engaged in unreasonable delay after Mildred died, and if that delay had sufficiently prejudiced the defendants, then the defendants could plausibly assert laches as a bar to Dorothy's claim despite that the statutory limitations period had not yet expired.  UTC § 1005 cmt.  But the defendants offered no facts on their pleas in bar to prove that.  They focused their argument instead on Charles's failure to act following Schumann's 2009 disclosure—"15 years" before—delay that cannot amount to laches as a matter of law.

We also agree with Dorothy that the allegations in the complaint suffice to show that the defendants' unclean hands prevent them from asserting a laches defense.  The "unclean hands" doctrine "is an ancient maxim of equity courts." *Cline v. Berg*, 273 Va. 142, 147 (2007) (quoting *Richards v. Musselman*, 221 Va. 181, 185 (1980)).  Because "'[h]e who comes into equity must come with clean hands,' . . . the complainant seeking equitable relief must not himself have been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *Id.* (quoting *Richards*, 221 Va. at 185 n.1).  The unclean hands doctrine is typically invoked as a defense against "the party seeking an equitable remedy." *Id.* at 147.  But as Dorothy correctly points out, it was the plaintiff in *Wiglesworth* who asserted the unclean hands doctrine to defeat the defendant's laches defense.  239 Va. at 608-09.  The parties are similarly aligned here.  Taking the facts of the complaint in the light most favorable to Dorothy, the defendants' alleged misconduct in permitting John to plunder the trust assets suffices at the pleading stage to defeat their laches defense.

- 17 -

Disallowing the defendants' laches defense here will not unreasonably burden Virginia trustees by forcing them to defend potentially meritless breach-of-trust claims based on events that occurred years or decades earlier. The Virginia Uniform Trust Code addresses such concerns in at least three ways.

First, during the term of the trust, a beneficiary's informed consent to the trustee's actions will extinguish any breach-of-trust claim. Thus, Code § 64.2-800(A) (UTC § 1009) provides:

> A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the trustee from liability for the breach, or ratified the transaction constituting the breach, unless:
>
> 1. The consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee; or
>
> 2. At the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

"A consent, release, or affirmance under this section may occur either before or after the approved conduct." UTC § 1009 cmt. But "an affirmative act by the beneficiary" is required. *Id.* "A failure to object is not sufficient." *Id.*[12]

Second, a trustee can trigger the one-year limitations period for a beneficiary to sue for breach of trust if the trustee provides a report that "[1] adequately disclose[s] the existence of a potential claim for breach of trust and [2] inform[s] the beneficiary of the time allowed for commencing a proceeding." Code § 64.2-796(A). By following that guidance, a trustee who desires repose may secure it in "one year." *Id.*

---

[12] Transactions by the trustee involving self-dealing are subject to an additional safeguard. The beneficiary's "approval is binding only if the transaction was fair and reasonable." UTC § 1009 cmt.

And third, when a trustee resigns or the trust is terminated, the trustee can obtain repose from any breach-of-trust claim in as few as 60 days if the trustee follows the requirements of Code § 64.2-800(B):

> A beneficiary shall be deemed to have released a trustee and ratified all actions of a trustee for the administration of the trust if, when the trust terminates or the trustee ceases to serve:
>
> 1. The trustee sends the beneficiary the following:
>
> a. A report as described in subsection C of § 64.2-775, for the immediately preceding two years;[13]
>
> b. The amount of any taxes, expenses, or fees, including trustee fees and any reserves, remaining to be paid;
>
> c. Notice that (i) the trust is terminating or that the trustee is ceasing to serve; (ii) if the beneficiary does not object in writing to the trustee within 60 days after the trustee sent the notice and information, the beneficiary shall be deemed to have released the trustee and ratified all actions of the trustee; and (iii) the trustee is unaware of any undisclosed information that could give rise to a claim by the beneficiary; and
>
> d. If the trust is terminating, a description of any trust property or interests reasonably anticipated but not yet received and a proposal for distribution; and
>
> 2. The beneficiary does not notify the trustee of the beneficiary's objection in writing within 60 days after the trustee sent the notice and information pursuant to subdivision 1.

The General Assembly added this mechanism in 2024. 2024 Va. Acts chs. 446, 600 (codified at Code § 64.2-800(B)-(E)). If the trustee complies with the terms of subsection B above, receives no objection from the beneficiary or resolves any objection, and properly distributes the assets, "such action shall have the same legal and preclusive effect as if a court had entered a final order

---

[13] The disclosure under Code § 64.2-775(C) is "a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values."

approving the trustee's final account or approving the trustee's interim accounts." Code § 64.2-800(E). "A beneficiary or other party who received the notice and statements and either consented or did not object shall be prohibited from bringing a claim against the trustee." *Id.* These provisions offer broader liability protection for Virginia trustees than the Uniform Trust Code, which has no corresponding language.[14]

### C. The trial court erred in denying leave to amend (Assignment of Error 3).

Rule 1:8 provides that when a trial court considers a motion to amend a pleading, "[l]eave to amend should be liberally granted in furtherance of the ends of justice." We review a trial court's decision granting or denying leave to amend for abuse of discretion. *AGCS Marine Ins. Co. v. Arlington County*, 293 Va. 469, 487 (2017). Still, a trial court should ordinarily grant leave to amend unless there is a good reason not to. Legitimate reasons to deny leave to amend include when

> the proffered amendments are legally futile, when the amendment is untimely under an order granting leave to amend by a certain deadline or fails to satisfy other conditions in the scheduling order, when there is no proffer or description of the new allegations, when amendment would be unduly prejudicial to the responding party, or when the amending party has engaged in improper litigation tactics.

*Id.* at 486.

While the pleas in bar were pending in the trial court, Dorothy sought leave to file an amended complaint that, among other things, would have added allegations about alleged malfeasance by John, Easterling, Vess, and Rogers. She also sought to raise the ad damnum

---

[14] Several other States have adopted repose statutes like Virginia's. *See* D.C. Code § 19-1310.09(c)-(i); Ind. Code § 30-4-5-14.5; Ky. Rev. Stat. Ann. § 386B.8-180; Md. Code Ann., Est. & Trusts § 14.5-907(c)-(f).; Nev. Rev. Stat. § 165.1214(4)-(6); 20 Pa. Cons. Stat. § 7785.1.

from $250,000 to $1 million. The trial court denied leave amend "as futile," finding that the amended complaint would also be barred by the statute of limitations and laches.

"A court always abuses its discretion when it makes an error of law." *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 206 (2022). Because the trial court committed an error of law when it found Dorothy's claims to be time-barred, the court necessarily erred in denying her leave to file the amended complaint.

CONCLUSION

Dorothy's breach-of-trust claims against the defendants as alleged in her complaint are timely under the five-year limitations period in Code § 64.2-796(C) and are not foreclosed by laches. So the trial court erred when it dismissed Dorothy's complaint as time-barred and denied her leave to amend as futile. The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*